# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTY OF BRISTOL, OCTOBER TERM 1867, AT TAUNTON.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN, } Justices.
Hon. DWIGHT FOSTER,
Hon. JOHN WELLS,

### Amasa C. White vs. Samuel D. Godfrey.

A. conveyed to W. a lot of land "situate on the northerly side" of a certain street and "bounded and described as follows: beginning at a point on the line of land of B.; thence by said street north fifty-eight and three quarters degrees west, about one hundred feet, to a stake and stones at the corner of land of G.; thence north thirty-one and a quarter degrees east, to the river; thence by said B.'s land to the first mentioned bound." *Held,* that the fee of the land to the centre of the street passed to W., it appearing that A. was seised thereof at the time of this conveyance.

The Gen. Sts. c. 46, § 6, protect all shade trees which were standing within the limits of public ways in any city or town when the Gen. Sts. took effect, (June 1, 1860,) from mutilation, destruction, or removal, except by adjudication of the mayor and aldermen, or the selectmen, upon a complaint on which the owner of the tree is entitled to notice and an opportunity to be heard.

Tort for cutting off limbs of an elm tree on Summer Street in Taunton.

At the trial in the superior court, before *Morton*, J., it appeared that the plaintiff acquired a lot of land on that street, by a deed in which the description was as follows: "A certain tract of land situate at the Neck of Land, so called, in said Taunton, on the northerly side of Summer Street, bounded and described as follows: beginning at a point on the line of Samuel Blake's land; thence by said street north fifty-eight and three quarters degrees west, about one hundred feet, to a stake and stones at the corner of Job Godfrey's land; thence north thirty-one and a quarter degrees east, to the river; thence by said Blake's land to the first mentioned bound." By other deeds introduced in evidence, it appeared that the plaintiff's grantor owned the fee to the centre of the street.

It also appeared that the tree was an old one, and stood about two feet and a half on the highway, in front of the plaintiff's fence; that it had never been licensed or authorized by the selectmen or mayor and aldermen, or by any other officer; and that the street was only thirty-two feet wide from the tree to the opposite side, and one of the oldest and principal streets in Taunton; that the city owned an engine-house nearly opposite the plaintiff's lot, and the city council ordered it to be moved to another location, but no formal application was made to the mayor and aldermen, according to the city ordinances, for a license to move it; that the defendant was superintendent of streets, and was employed by the city to move this engine-house; and that it was needful to cut the tree in order to move the building. It was not contended that any more was cut by him than was necessary for that purpose.

The defendant asked the judge to rule that the plaintiff did not own the fee to the centre of the street, and that, if he did, the defendant had a lawful right under all the circumstances to trim the tree as alleged; but the judge directed a verdict for the plaintiff, the parties agreeing upon the amount of damages, if the plaintiff was entitled to recover; and the defendant alleged exceptions.

*E. H. Bennett,* for the defendant. 1. The plaintiff did not own the soil to the centre of the street. His land was on "the

side " of the street. His corner bound was " a stake and stones," which was not in the highway, but at the side of it. *Smith* v *Slocomb*, 9 Gray, 36. *Niles* v. *Patch*, 13 Gray, 254. 2. If he did own to the centre, he had no ownership in the tree as against the public. *Tucker* v. *Tower*, 9 Pick. 109. *Brainard* v. *Clapp*, 10 Cush. 6. The surveyor, as agent of the public, may cut trees to improve the highway. *Tucker* v. *Eldred*, 6 R. I. 404. 3. Moving buildings through public streets is a legitimate use sanctioned by long custom. *Graves* v. *Shattuck*, 35 N. H. 257. Highways are not intended merely for horses, teams and carriages, or travellers, in the limited sense of that term ; but for *such uses as the common, prevalent and various pursuits of life from time to time require.* Merrick, J., in *Gregory* v. *Adams*, 14 Gray, 247, 248. That no formal license was applied for to the mayor and aldermen, was immaterial, for that board and the common council had both ordered the moving to be done. Besides, moving a building without a license would only subject a party to the penalty of the ordinance, not enlarge the rights of landowners along the route. 4. The tree had not been licensed under the Gen. Sts. *c.* 46, § 6.

*J. H. Dean*, for the plaintiff.

Foster, J. We entertain no doubt that the plaintiff owned the land to the centre of the street. By the doctrine now established, such is the presumption wherever a deed bounds an estate by or on a public or private way, unless a contrary intent appears on the face of the instrument. *Boston* v. *Richardson*, 13 Allen, 146. He had therefore sufficient title to maintain this action, unless the acts of the defendant were justifiable. We assume that the powers of the superintendent of streets in the city of Taunton are coextensive with those of an ordinary surveyor of highways. Such officers, by the Gen. Sts. *c.* 44, § 8, may, with certain exceptions, " cut down or lop off trees and bushes, and dig up and remove whatever obstructs or encumbers a highway or town way, or hinders, incommodes or endangers persons travelling thereon." The exception material to the present question is that of *c.* 46, § 6, which provides that " the mayor and aldermen, selectmen or any municipal officer of a city or town

to whom the care of the streets or roads may be intrusted, may authorize the planting of shade trees therein wherever it may not interfere with the public travel or with private rights; and shade trees standing and trees planted pursuant to such license shall be deemed and taken to be the private property of the person so planting them or upon whose premises they stand or are planted, and shall not be deemed a nuisance; but upon complaint made to the mayor and aldermen or selectmen they may cause such trees to be removed, at the expense of the owner thereof, if the public necessity seems to them so to require." This section is derived from the St. of 1856, c. 256, § 1, but the words "shade trees standing" and "upon whose premises they stand" were added to the original enactment when the General Statutes were passed. In our opinion this was done in order to enlarge the operation of the section for the benefit of the owners of estates who had shade trees already standing within the limits of public ways and streets. Its effect is to protect such trees existing before 1856, as well as those the planting of which has been licensed since, from mutilation or destruction except upon a complaint to the mayor and aldermen or selectmen and an adjudication that public necessity requires their removal; a proceeding of which, upon general principles, the owner would be entitled to notice with an opportunity to be heard. This enactment has limited in an important manner the powers of highway surveyors. Shade trees are no longer liable to be treated as a nuisance and lopped or cut down at the discretion of every such officer. They are private property, to the ornament and shelter of which the owner of an adjacent estate is entitled, and they cannot be interfered with except upon due process of law as marked out in the statute. The action is therefore maintainable.            *Exceptions overruled.*