JOHN McCARTHY vs. CITY OF BOSTON.

Suffolk. March 16. — June 20, 1883. DEVENS & W. ALLEN, JJ., absent.

The ordinance of the city of Boston, giving the superintendent of the Common and public grounds the care and superintendence of the trees in the streets of the city, does not empower such superintendent to cut down a tree in a street of the city, which belongs to an abutter.

While the superintendent of the Common and public grounds in the city of Boston was attempting to cut down a tree in a street of the city, which belonged to an abutter, a workman employed by him for the city was injured, through the alleged negligence of the superintendent. *Held,* that whether the superintendent was acting under the authority of the board of aldermen as surveyors of highways, or was acting without authority of law, the city was not responsible to the workman.

TORT for personal injuries received by the plaintiff while in the employ of the defendant. Trial in the Superior Court, before *Gardner,* J., who reported the case for the determination of this court, in substance as follows :

The plaintiff offered evidence tending to show that he received injuries by falling from a tree, while engaged, under the direction of a foreman or assistant superintendent employed by the defendant, in cutting a branch from the tree; that the accident was occasioned by the gross carelessness of the defendant in neglecting to furnish him with proper implements, to employ proper foremen or fellow servants to direct him, and to give him suitable cautions and directions to enable him to do his work with safety to himself; and that the plaintiff was in the exercise of due care. The plaintiff also offered evidence tending to show that he was hired for the defendant by William Doogue, the defendant's superintendent of the Common and public grounds; that Doogue was appointed as such superintendent under ordinances or by-laws, one of which was as follows: " The superintendent of the Common and public grounds shall, under the direction and control of the city council or a joint committee thereof, have the care and superintendence of the Common, Public Garden, and all the public squares and enclosures belonging to the city, and also the trees in the streets of the city; " that the plaintiff was set to work by the superintendent under the immediate direction and control of a foreman

or assistant superintendent named James Doogue; that the plaintiff was for several days kept at work sweeping paths on the Common, and in trimming trees on the Common and in the streets of the city of Boston; that then the plaintiff was sent by said superintendent to work under the direction of James Doogue, upon some trees standing and growing in the sidewalk of a public street called P Street, in that part of the city of Boston known as South Boston; that these trees were private property belonging to the abutter, upon whose premises they had stood for more than thirty years; that the abutter gave permission to have the trees cut down; that the plaintiff was ordered to ascend one of the trees and cut a certain branch therefrom; that while preparing to cut this branch, as he had been ordered to do, and while in the tree for that purpose, he fell and received the injuries complained of.

The plaintiff testified that " on the 4th day of February they were engaged in cutting down trees on P Street. In the forenoon James Doogue was not there. At noon he came there and told me to cut this tree down. He told me to get a rope, and others to get ladders. He told me to get up on the tree with the saw, which I did. I went up as he told me, and I was putting the rope around the limb I was to cut. I was trying to do it, and it broke from under me, and I fell to the ground. As I went up into the tree he gave me no cautions. I followed his directions."

There was also evidence tending to show that the plaintiff was afterwards paid by the defendant for the time he was at work in the position from which he fell.

There was no evidence in the case that any notice was given to the mayor or aldermen of any intention to cut down or trim said trees, or that the board of aldermen gave its consent to the cutting down or trimming of said trees, unless the jury would be authorized to infer the same from the facts already stated. It was admitted that the street in which the tree was growing was a public way of the city of Boston.

At the request of the defendant, the judge ruled that there was no evidence upon which the jury would be authorized to find that the defendant was liable for any damages sustained by the plaintiff at the time he received the injuries in question;

and ordered a verdict for the defendant; and, at the request of the parties, reported the case for the determination of this court, such order to be made therein as the law and the facts might require.

*J. G. Abbott & S. A. B. Abbott*, for the plaintiff.

*A. J. Bailey*, for the defendant.

FIELD, J.   Our attention has not been called to any special laws relating to trees in the city of Boston, except the St. of 1799, *c.* 31.   Section 5 of this act provides that " no person shall plant any tree in any street in the said town of Boston, without leave first obtained from the surveyors of highways, who shall have power to remove the same."   It does not appear from the report when the accident happened; but, assuming that the Public Statutes correctly represent the statutory law as it existed at that time, surveyors of highways and road commissioners had authority to cut down and lop off trees and bushes in highways, town ways, or streets, except such as are needed for shade trees.   Pub. Sts. *c.* 52, § 10.

The planting and protection of shade trees in streets are regulated by the Pub. Sts. *c.* 54, §§ 6–12.   Whether the Pub. Sts. *c.* 54, § 9, or the corresponding provisions in earlier statutes, have been accepted by the city of Boston, does not appear in the report; nor does it appear whether the city of Boston has ever accepted the St. of 1867, *c.* 242.   We have no judicial knowledge on the subject, although it is stated in the Ordinances of the City of Boston (ed. 1876) 585, *n.*, that apparently the first have not been accepted, and on page 863, that the last was accepted by the city council on October 1, 1867.   The decision of this case, however, does not depend upon the acceptance by the city of the St. of 1867, *c.* 242.

In reference to shade trees, it is provided that, " upon complaint made to the mayor and aldermen, selectmen, or road commissioners, they may cause such trees to be removed at the expense of the owner thereof, if the public necessity seems to them so to require."   Pub. Sts. *c.* 54, § 6.   In the city of Boston the board of aldermen are the surveyors of highways, and have the powers of selectmen.   St. 1854, *c.* 448, §§ 33, 41.

The tree in this case was not the property of the city, and, whether it was a shade tree or not, the board of aldermen alone

had the rightful power to determine that it should be cut down. The superintendent of streets performs his duties under the direction and control of the board of aldermen.

By the St. of 1854, c. 448, § 39, it is provided that the city council shall have "the care, custody, and management of all the property of the city, with power to lease or sell the same, except the Common and Faneuil Hall." The provision in the ordinance relating to the Common and public grounds, that "the superintendent of the Common and public grounds shall, under the direction and control of the city council, or a joint committee thereof, have the care and superintendence of the Common, Public Garden, and all the public squares and enclosures belonging to the city, and also the trees in the streets of the city," cannot be held to empower him to cut down a tree, in a street of the city, which belongs to the abutter, whether it be a shade tree or not. There may be trees in the streets of the city which the city owns by reason of owning the fee of the street, or from acquiring title in some other manner. Over these trees, the city has the rights of an owner, and the city council may properly commit the care of them, under its direction, to the superintendent of the Common and public grounds, and it is not necessary to construe the ordinance as an attempt on the part of the city council to exercise an unlawful authority over trees in streets belonging to abutters.

If the superintendent of the Common and public grounds, in attempting to cut down this tree, was acting under the power of the board of aldermen to remove shade trees, or to remove obstructions from the streets, the city is not responsible for his acts. The board of aldermen in performing these duties act as public officers, and not as agents of the city. *Barney* v. *Lowell*, 98 Mass. 570. *Haskell* v. *New Bedford*, 108 Mass. 208. *Fisher* v. *Boston*, 104 Mass. 87. *Hill* v. *Boston*, 122 Mass. 344. *Cushing* v. *Bedford*, 125 Mass. 526. *Buttrick* v. *Lowell*, 1 Allen, 172. *Walcott* v. *Swampscott*, 1 Allen, 101. *Hafford* v. *New Bedford*, 16 Gray, 297. *Bigelow* v. *Randolph*, 14 Gray, 541.

If the superintendent was not acting under this power, he was acting without authority of law, in a matter over which the city council had no control; and even if the city council had attempted to give him authority, as it was beyond its powers,

the city would not be responsible for his acts.   *Lemon* v. *Newton*, 134 Mass. 476.   But for the permission to cut the tree down given by the abutter, if it were a shade tree, the superintendent would have been a trespasser, as there was no adjudication by the board of aldermen that public necessity required it; *White* v. *Godfrey*, 97 Mass. 472; and if it were not a shade tree, it could only be cut down by the proper authority, for the purpose of improving the street.   *Makepeace* v. *Worden*, 1 N. H. 16. *Tucker* v. *Eldred*, 6 R. I. 404.

It is unnecessary to consider the other objections to the maintenance of the action.                    *Judgment on the verdict.*