MATTIE M. TATE v. THE CITY OF GREENSBORO et al.

*Municipal Authority—Control of Streets—Right to Cut Down Shade Trees—Street Committee—Damnum Absque Injuria.*

1. A city has exactly the same rights in and is under the same responsibilities for a street which it controls by dedication only as in and for one which has been granted or condemned; and the rights of the abutting proprietor are no greater in such street than if it had been granted or condemned.

2. The law gives to municipal corporations an almost absolute discretion in the maintenance of their streets, since wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid.

3. The charter of the city of Greensboro and the general law of the State (*The Code,* ch. 62, Vol. II) give to the municipal authorities of that city wide discretion in the control and improvement of its streets, and if damage result to an abutting property owner by reason of acts done by it neither negligently nor maliciously and wantonly, but in good faith in the careful exercise of that discretion, it is *damnum absque injuria.*

4. The Courts will not interfere with the exercise of a discretion reposed in the municipal authorities of a city as to when and to what extent its streets shall be improved, except in cases of fraud and oppression constituting manifest abuse of such discretion.

5. The power given to a city over the streets can be delegated to a street committee composed of members of the Board of Aldermen, and the members of such committee, acting as such and within the limits of the power of the city, are not answerable, individually, for damage resulting from their acts.

(AVERY, J., dissents *arguendo*, in which MACRAE, J., concurs).

This was a CIVIL ACTION, tried before *Connor, J.*, and a jury, at August Term, 1892, of the Superior Court of GUIL-FORD County.

By consent of the parties the Court found the facts upon the pleadings and the testimony, submitting to the jury the issue in regard to damages. It was agreed that if, upon the facts as found, the Court should be of the opinion that the defendants or either of them were liable, judgment should be rendered in favor of the plaintiff and against such defendant or defendants for the sum of $300, with interest from the ____ day of August, 1892, and costs, the said sum being the amount of damages assessed by the jury, otherwise the verdict should be set aside and judgment be rendered against the plaintiff for costs. Pursuant to said agreement the Court found the following facts:

The plaintiff on the 3d day of August, 1891, and for several years prior thereto, was and had been the owner of and with her husband resided upon a lot in the city of Greensboro situated on Ashboro street, adjoining the lots of W. R. Murray and others and bounded as follows (as described in the complaint).

That Ashboro street was on said day, and had been for several years prior thereto, a public street and highway in said city of Greensboro, held and maintained as such and used by the citizens of said city to pass and repass on foot

and in vehicles and worked upon by the street force in the
employment and under the control and directions of the
authorities of said city.    That prior to the plaintiff's pur-
chase of the said lot the owner thereof had dedicated to
the said city, as and for a public street, the land upon which
the trees hereinafter referred to were standing and growing,
together with the space of from five to six feet for a side-
walk; that the plaintiff after the purchase and at the sug-
gestion of some adjoining land owners set the fence back
two and a half feet, thus making the sidewalk eight feet
wide; that on the outer edge of the sidewalk, and within
the line of the curbing in front of the plaintiff's said lot and
dwelling-house situated thereon, there was standing on and
before the said day, and at the time of plaintiff's purchase
of said lot, three oak trees of considerable size, which cast
shade upon said dwelling-house and lot, contributing to
the comfort thereof as a dwelling-place; that the leaves on
the said trees obstructed the rays of the sun and so shaded
the street as to cause the same for a portion of the time to
be and continue damp; that there was near the front gate
of the plaintiff's lot, before the said trees were removed as
hereinafter set forth, a hole formed by a depression in the
soil, in which mud and water stood and at times created an
offensive odor, which was increased by green limbs and
leaves thrown into said mud-hole by directions of the street
force of said city; that on the said 3d day of August, 1891,
the space between the said trees and the plaintiff's fence
was not uniform for the entire length of said fence, but
averaged about eight feet, being at no point less than seven
feet, and afforded room for persons to pass in the usual
manner upon said sidewalk without inconvenience; that
by section 60 of the charter of the city of Greensboro (see
Laws of 1889, Private Acts, ch. 219) it is provided that
the Board of Aldermen shall have power to grade, macad-

amize and pave the streets and sidewalks, and to lay out, change and open new streets or widen those already open and make such improvements thereon as the public convenience may require; that section 12, ch. 1, of the ordinances of the city of Greensboro provides: "There shall be appointed by the Mayor at the first regular meeting after organization in May eight standing committees of four members each, as follows, to-wit: * * * street committee." Section 13 of the said ordinances provides: "The street committee shall have control and supervision of all matters relating to the streets, sidewalks and pumps of the city, and shall determine the amount of labor and material to be used * * * and shall report to the board from time to time, and perform all other duties imposed upon them by the Board of Aldermen."

That pursuant to the provisions of the ordinances above set forth the defendants J. L. King and H. L. Scott, together with J. D. Glenn and J. R. Mendenhall, were duly appointed a street committee for the year 1891; that complaint having been made to the said street committee by some of the citizens of said city respecting the condition of said street, the defendants King and Scott severally conferred with J. R. Mendenhall, and they concurred in the conclusion that the said trees should be removed. No formal meeting of the said committee was called or held in regard to said matter.

That pursuant to said conclusion the defendants John L. King and Hugh L. Scott directed the said street force of said city to remove the said trees, and on the said 3d day of August, 1891, the said street force began the removal of said trees by digging them up by the roots and concluded the work in two or three days. The trees were cut into logs and placed in the plaintiff's yard. The husband of the plaintiff was present and objected to the removal of

said trees, and notified the defendants that they would be held responsible therefor. That no action was taken or order made by the Board of Aldermen in respect to the removal of said trees, nor was any report made by the said street committee to the said Board in regard to their action in the premises; that after the removal of the trees the mud-hole was filled in by the city authorities with rock and the street so improved that it is now in good condition. The hole could have been filled in without removing the trees.

The Court, upon the foregoing facts, being of the opinion that the plaintiff was not entitled to have and maintain her action, directed the verdict rendered by the jury, whereupon the plaintiff submitted to a nonsuit and appealed.

*Messrs. R. M. Douglas, L. M. Scott* and *J. A. Barringer*, for plaintiff.
*Messrs. Dillard & King* and *James E. Boyd*, for defendant.

BURWELL, J.: It is contended by the plaintiff, first, that even admitting that the act of which she complains—the destruction of shade trees standing on the outer edge of the sidewalk in front of her residence in the city of Greensboro—was done by the duly authorized agents of that municipal corporation, she is still entitled to recover for the damage done to her property by the cutting down of these trees, because his Honor has found that they did not obstruct the passage of persons on the sidewalk; that the public convenience did not require their destruction, and that the "mud-hole" in the street, for the removing of which this act seems to have been done, could have been remedied without cutting them down.

This phase of the case presents for our consideration this

question: Can the Courts review the exercise by the city of Greensboro of its power to repair and improve its streets and remove what it considers obstructions therein, and find and declare that certain trees in the streets of that city, which the municipal authorities honestly believed were injurious and obstructive to the public, were in fact not so, and upon such findings, there being no allegation of negligence or of any want of good faith on the part of the city, award damages to an abutting proprietor, the comfort of whose home has been lessened by the removal of the trees?

The street in which these trees stood was dedicated to public use as a street by those under whom the plaintiff claims title. Holding control of this street by reason of its dedication only, the city, nevertheless, has exactly the same rights therein and responsibilities therefor as if it had been by deed of the owner conveyed to the corporation for use for street purposes, or had been condemned and taken for those purposes according to the provisions of the charter. And the rights of the plaintiff therein are no greater than if it had been so conveyed or so condemned and taken. Now the responsibilities that counties and townships assume, or are put under by the law, in relation to their highways is very different from those of cities and towns in relation to their streets. It is required that roads shall be kept in repair, and certain individuals, upon whom is cast in one way or another the burden of seeing that these repairs are made, can be indicted for failing to perform this duty, but the municipality (county or township) is not held liable for damages that may result from the roads being out of order or obstructed. Cities and towns, however, are held to strict pecuniary accountability for the condition of their streets. They are not political divisions of the State, made by it for convenience in its government of the whole, but are corporations chartered presumably at the request of the inhab-

itants, and granted privileges and charged with corre-
sponding responsibilities. Among the very gravest of the
pecuniary responsibilities that the law imposes on cities and
towns is liability for damages to persons and property
caused by a defective or improperly obstructed street.
*Bunch* v. *Edenton,* 90 N. C., 431; *White* v. *Commissioners,*
*Ibid,* 437. Hence it is that the law gives to all such corpo-
rations an almost absolute discretion in the maintenance of
their streets, considering, it seems, as is most reasonable,
that wide discretion as to the manner of performance should
be conferred where responsibility for improper performance
is so heavily laid. Illustrative of this is the provision of
*The Code,* §3803, that the commissioners of towns "shall
provide for keeping in proper repair the streets and bridges
of the town *in the manner and to the extent they may deem
best."* We think that under its charter and under the gen-
eral law of the State (*The Code,* ch. 62, Vol. II) the city of
Greensboro was clothed with such discretion in the control
and improvement of its streets, and if damage comes to the
plaintiff by reason of acts done by it, neither negligently
nor maliciously and wantonly, but in good faith in the
careful exercise of that discretion, it is *damnum absque
injuria. Smith* v. *Washington,* 20 How., 135; *Brush* v. *City
of Carbondale,* 78 Ill., 74; *Pontiac* v. *Carter,* 32 Mich., 164.

It is not to be denied that the abutting proprietor has
rights as an individual in the street in his front as contra-
distinguished from his rights therein as a member of the
corporation or one of the public. The trees standing in
the street along the sidewalk are in a restricted sense his
trees. If they are cut or injured by an individual who
has no authority from the city to cut or remove them he
may recover damages of such individual. His property in
them is such that the law will protect it from the act of
such a wrong-doer and trespasser. *Bliss* v. *Ball,* 99 Mass.,

TATE *v.* GREENSBORO.

597, and *Graves* v. *Shattuck*, 35 N. H., 257 (69 Am. Dec.), are illustrations of this principle. In the former case the Court, speaking of the injury done by defendant to the trees in the street in front of plaintiff's lot, said: "If the defendant thought they were a nuisance, he might have complained to the selectmen, and it was for them to decide the question whether they should be removed. * * * The defendant had no authority to remove them, nor were the jury authorized to decide the question whether they ought to remain"; and thus that authority seems abundantly to sustain the position that it is not for a Court and jury to review the conduct of the proper municipal authorities in such a matter as that now under consideration. In *Barnes* v. *District of Columbia*, 91 U. S., 540, it is said: "The authorities state, and our own knowledge is to the effect, that the care and superintendence of streets, alleys and highways, the regulation of grades and the opening of new and the closing of old streets are peculiarly municipal duties. No other power can so wisely and judiciously control this subject as the authority of the immediate locality where the work is to be done."

The wisdom of this rule is well illustrated by this action. Complaints were made, it seems, by citizens that these trees were injurious to the public way and, in their effects, perhaps, to the public health. The proper authorities of the city, clothed with the power to repair the streets and protect the public health, listened to these complaints, and in the exercise of their best judgment, so far as appears, decided that the interest of the community required their removal. The proposition of the plaintiff is that a jury shall judge of the correctness of this conclusion, and if they find that the officials committed what they think was an error, they and the city shall be mulct in damages. "The maintenance of such an action would transfer to

Court and jury the discretion which the law vests in the municipality, but transfer them not to be exercised directly and finally, but indirectly and partially by the retroactive effect of punitive verdicts upon special complaints." Cooley Const. Lim., 255 (6th Ed.).

*Phifer* v. *Cox*, 21 Ohio St., 248, which plaintiff's counsel cited in their brief, related to a county road, and the alleged wrongful cutting of plaintiff's hedge was done by a private citizen. So it has no application, we think, to this case, and belongs to the same class of decisions as *Graves* v. *Shattuck* and *Bliss* v. *Ball, supra.*

*Bills* v. *Belknap*, 36 Iowa, 583, also cited, relates to the cutting down of trees standing in a highway in the country, and the action was to restrain the supervisor of the road. In *Everett* v. *City of Council Bluff*, 46 Iowa, 66, also relied on by plaintiff, which was a suit to enjoin the defendant from cutting down certain shade trees in front of plaintiff's lot, the petition alleged that the trees were "perfectly safe and sound and afforded no obstruction to the free use of the street and sidewalk," and stated reasons why they should not be removed. The defendant made no answer, and as the Court said the allegations of the petition were taken as true, and so it appeared by the admission of the defendant that its officers were about to do, under its orders, a wrong to the plaintiff, which, because it conceded that the public interest did not in any way require it to be done, would be wanton and unnecessary. We think that case is clearly distinguishable from the one now under consideration.

The principles which govern in this matter are well stated in *Chase* v. *City*, 81 Wis., 313 (51 Northwestern Rep., 560), an action for damages for cutting down shade trees, very similar to the one we are considering, from which we make the following quotation: "The right of the public to the use

of the street for the purposes of travel extends to the portion set apart and used for sidewalks, as well as to the way for carriages, wagons, etc., and, in short, to the entire width of the street upon which the land of the lot owner abuts. As against the lot owner the city, as trustee of the public use, has an undoubted right, whenever its authorities see fit, to open and fit for use and travel the street over which the public easement extends to the entire width, and whether it will so open and improve it, or whether it should be opened or improved, is a matter of discretion to be determined by the public authorities to whom the charge and control of the public interests in and over such easements are committed.    With this discretion of the authorities Courts cannot ordinarily interfere upon the complaint of the lot owner so long as the easement continues to exist. * * *    The public use is the dominant interest, and the public authorities are the exclusive judges when and to what extent the streets shall be improved.    Courts can interfere only in cases of fraud and oppression, constituting manifest abuse of discretion.    It necessarily follows that for the performance of this discretionary duty by the city officers in a reasonable and prudent manner no action can be maintained against the city."

Having shown, as we think, that the plaintiff cannot recover of the city, we come to consider her second proposition—that she can recover damages of "the other defendants, King & Scott, not as the servants or agents of the city, but as independent tort feasors," as it is stated in the brief of her counsel.    In other words, it is proposed that the cause of action as against the city shall be abandoned, and the cause proceed against the other defendants upon the theory that they had no authority from the city to do the act complained of.

We think the power given to the city over the streets

could be delegated to a street committee composed of members of the Board of Aldermen, as this one was; that this action was the action of that committee, and therefore of the city, and that just as these individals would have been answerable in damages to the plaintiffs, if the act had been beyond the power of the municipality, so they are not liable if the act was within those powers. All went to show that the individual defendants were acting as agents and officers of the city. They so assert. The city so insists, and distinctly ratifies their act. Therefore, as the city has done no legal wrong, neither have they.

Affirmed.

AVERY, J., dissenting: It is always safe to recur to fundamental principles. It is perilous to refrain from going to the fountain-head where the controversy arises out of an attempt of a public agency to use or destroy without compensation what is claimed to be private property. The very question involved in the case at bar is, What are the rights respectively of the servient and dominant owners— the town and the abutting proprietor in a street—what passed to the public with the easement and what residuary interest remained in the owner after the appropriation by the municipality for corporate purposes? The taking of private property for a public highway, like any other exercise of the right of eminent domain, can be justified only on the ground of public necessity—that it is essential, in order to subserve the convenience or promote the prosperity of the great body of people comprehended under the general designation of the public, to give them the use of it for certain specified purposes. Cooley Con. Lim., 643. Where an easement is acquired, whether by grant, dedication or condemnation, nothing more passes to the public than the power to use the land strictly in furtherance of the objects

for which the Legislature authorized its appropriation. Except in so far as his right of enjoyment is restricted by the inhibition against his interference with its use for the particular public purposes, all of the rights of ownership are still retained by the holder of the servient tenement. The other estate dominates and overshadows his right only so far as is necessary to subserve the ends for which its privilege has been granted.

The residuary rights of the abutting owner in a street are somewhat more restricted than those of an adjacent proprietor in a public road, because, in contemplation of law, the damages for the taking are measured by the extent of the public use and the consequent limitation of private enjoyment by the servient owner.

I may safely lay it down as a general proposition that when the Legislature permits private property to be taken by a public or quasi-public corporation the State intends that it shall be appropriated only for corporate purposes— such uses as may be necessary in order to enable the public agency to perform its duties to the State and enjoy the compensatory privileges granted to it. Whatever rights of property in streets do not pass, from the very nature of a municipality, as necessary to the discharge of its public functions or as inseparable incidents to the franchise granted, remain in the abutting proprietor, reserved by implication of law for his benefit, whether the city or town has acquired the fee or an easement either by grant, dedication or condemnation, and whether the line of such abutting owner extends to the margin or middle of the street. The abutting proprietors have a qualified property in a street which entitles them to make "any beneficial use of the soil of such highway which is consistent with the prior and paramount rights of the public therein for street purposes proper." 2 Dillon, sec. 656b. "If they own the fee to

the center line of the streets" (says Judge DILLON) "their rights therein are legal in their nature. If they own the fee to the line of the streets their rights in the street are in the nature of equitable easements in fee, but in extent are substantially the same as when the fee is in them subject to public use." *Ibid.*, secs. 663, 664, 661; *Bliss* v. *Ball*, 99 .Mass., 597. "Where one's land is bounded on a public highway" (says Judge COOLEY in his work on .Torts, p. 317) "it presumptively extends, not to the outer line, but to the middle of the road, and his supreme dominion embraces the whole, qualified only by the public easement." In this respect there is a striking analogy between abutting and riparian owners of the fee, in that a certain incidental qualified property attaches in the highway, whether it be a public road or navigable water. *Bond* v. *Wool*, 107 N. C., 139; *Yates* v. *Milwaukee*, 10 Wall,, 497. The street consists of the carriage way and sidewalk, the enjoyment and use of both of which are recognized by the Courts as the right of the abutting proprietor, of which he cannot be deprived by the municipality or even by the Legislature without his consent and without adequate compensation. *Moose* v. *Carson*, 104 N. C., 431; *State* v. *Brown*, 109 N. C., 802. A municipal corporation though authorized by statute to widen streets can do so only where some mode of ascertaining the damage done by taking additional land and of enforcing its payment is prescribed by law and pursued by the corporation. On the other hand, a city or town has no right to sell a portion of a street in front of an abutting owner or to diminish its width in any way without compensation and contrary to his wishes. *Moose* v. *Carson*, *supra*. It being conceded that the abutting owner has a qualified property in the street on his front, the only safe criterion by which to test the justice of a claim to any specified right is the consistency or inconsist-

ency of its exercise with the use of the highway by the municipality for corporate purposes. The original owner of the soil surrenders his absolute property in his frontage for a qualified one in full contemplation of the authority of the corporation whenever it may become necessary for public purposes either to elevate or lower the level of the street, though he may suffer some inconvenience from any alteration of the grade, and consequently it is supposed that such damage was considered when the cost of the easement was estimated and paid or that a donation was made, subject to the contingency of suffering such loss.

Guided by the principles stated, this Court held that for loss caused by excavation on embankments made in changing the grade of a street the abutting owner could not recover unless the injury was directly due to want of skill or negligence in the excavation of the work. *Meares* v. *Wilmington*, 9 Ired., 73; *Wright* v. *Wilmington*, 92 N. C., 156.

In such cases it was considered that the alteration in the highway was not a new taking, but a use of it that was in contemplation at the time when the easement passed to the public. Cooley Con. Lim., p. 671; 2 Dillon, sec. 992, and note. Even this rule, however, has proven so oppressive in practice as to lead in some of the States to the enactment of statutes and the amendment of constitutions so as to create a liability as for an original taking, when there is a change of grade such that damage ensues to an adjacent proprietor. Lewis on Em. Domain, ch. 8, especially sec. 221.

"The public," says Mr. Lewis, "acquire no right in the use of springs in the highway and cannot divest them for the purpose of making a public watering-place. The owner of the land cannot change the location of the road when it crosses his land. He may deposit materials on the surface of the way, plant shade trees or ornamental trees therein, set hitching posts, etc.   *   *   *   The public cannot place

structures on the soil which have no connection with its use as a highway." Lewis on Em. Domain, p. 759; *Deaton* v. *The County of Polk*, 9 Iowa, 594. "Subject to the paramount right of the public the rights of the owner of the fee remain the same as though the public easement did not exist. * * * As against the public he may make any use of the land which does not interfere with the use and enjoyment of the same as a highway." *Ibid*, sec. 589, p. 758. The learned author claims for the owner of the fee the right to plant trees in the highway both for shade and ornament, and it cannot be denied that he acquires a qualified property in the fruit of his labors when they grow so as to subserve his purpose. It is conceded to be the law in North Carolina that such shade trees can be cut down by a city when the grade is changed, because they are planted in contemplation of the principle that the power to grade is a continuing one, and that "of the necessity or expediency of its exercise the governing body of the corporation, and not the Courts, is the judge." 2 Dillon, sec. 686 and note.

But though a tree be planted subject to the right of the city to destroy it in the exercise of this continuing power to improve its streets, it is nevertheless the property of the owner of the fee, and when no change of grade is ordered the governing authorities of the town have the right to remove it only on the ground that it obstructs the highway and is therefore a public nuisance, or after condemnation and the payment of compensation ascertained in a mode pointed out by law.

Mr. Wood, in his work on Nuisances, section 294, not only agrees with such other able and discriminating text-writers as Judge DILLON in declaring that the adjacent owner has a property in trees planted in his front, but in maintaining that the municipal authorities are responsible if

they deal with them as nuisances, when in fact they do not interfere with the ordinary use of the streets and sidewalks. He says: "Shade trees set in a street or highway without authority of law, which in any measure obstruct travel, are a nuisance. * * * But they can be removed only by the owner or the public authorities, and if they (the public authorities) remove them when they do not obstruct travel they are liable to the owner in damages therefor." See also, *Clark* v. *Doseo*, 34 Mich., 86. If damage can be recovered it must *ex necessitate* be assessed by a jury, since it will not be contended that it is a taking in the exercise of the right of eminent domain for which the law provides any other mode of fixing the compensation.

Thus we find that all of the leading text-writers concur in construing the decisions which I cite to sustain my view, and to have settled the principles in this country generally that a shade tree is the property of the abutting owner which cannot be destroyed as a nuisance unless it hinders the free use of the highway by the public, and where it is not an obstruction the owner may recover damages of the authorities of a city for its wrongful removal. In treating of the power to prevent and abate nuisances Judge DILLON says: "This authority and its summary exercise may be constitutionally conferred on the incorporated place, and it authorizes its counsel to act upon that which comes within the legal notion of a nuisance, but such power conferred in general terms cannot be taken to authorize the extra judicial condemnation and destruction of that as a nuisance which in its nature, situation or use is not such. * * * It is a doctrine not to be tolerated in this country that a municipal corporation without any general laws of the city or of the State within which a given structure can be shown to be a nuisance, can, by the mere declaration that it is one, subject it to removal by any person supposed to be aggrieved or even by the city

itself." *Everett* v. *City of Council Bluffs*, 46 Iowa, 66; 1 Dillon, sec. 374; *Yates* v. *Milwaukee*, 10 Wallace, 498; *State* v. *Jersey City*, 29 N. J. Law, 170; Cooley Const. Lim., 242, 741, note; *State* v. *Mott*, 61 Md., 297; *Ward* v. *Little Rock*, 41 Ark., 526; *Fertilizer Co.* v. *Hyde Park*, 70 Ill., 634; How & B. Mun. Corp., sec. 252.

If the destruction of the tree complained of is to be imputed to the defendant it is not contended that there was any other law authorizing the act than the general authority to prevent nuisances. Whether a city acts in such a case as this under the general power to abate nuisances or under special authority to remove obstructions, the rule is the same. "Power to a city to regulate the use of streets and alleys and to prevent and remove obstructions from them contemplates the preservation of *actual ways* against *nuisances which interfere with their accustomed* use, and until they have become actually open obstructions thereon, under a claim of title apparent on the face of the prosecution, cannot be dealt with under an ordinance in the municipal tribunal, but the *rights of the parties must be determined in the public courts.*" 2 Dillon, sec. 680, p. 809, and note; *Jackson* v. *People*, 9 Mich., 111; *Phifer* v. *Cox*, 21 Ohio, 248.

While in the exercise of the continuing authority to raise or lower the grade of streets the law requires of the city only good faith, care and skill, the arbitrary destruction of property or what is equivalent to its confiscation cannot be justified on the ground that the act was done under the honest belief that it was a lawful abatement of a nuisance because it obstructed the highway. If the tree was property and was not planted in contemplation of legal authority in the city, express or implied, to cut it down at will, but only in view of the possibility of its destruction as a nuisance, then unquestionably the plaintiff would have the right to have any disputed facts, such as the question where the tree was

standing, tried by a jury, with instruction from the Court as to what constituted nuisance such as the city might summarily abate. Good faith will not protect an officer who commits a trespass without the color of authority and thereby leave remediless one whose property is destroyed without reason or necessity. Elliott on Roads and Streets, p. 521.

An obstruction is defined as "anything which, without reasonable necessity, impedes the use of the streets for lawful purposes." Horr & Bemis Mun. Pol. Ord., sec. 230. "When adjacent owners retain the fee in the streets *the corporation has no right to destroy the trees*, unless they grow within the street or so as to obstruct traffic." Horr & Bemis, sec. 229; *Bliss* v. *Ball*, 99 Mass., 597; *White* v. *Godfrey*, 97 Mass., 472; *Tortor* v. *Morristown*, 19 N. J. Eq., 46; *Cross* v. *Morristown*, 18 N. J. Eq., 313; *Bills* v. *Belkry*, 36 Iowa, 583; *Everett* v. *Council Bluffs*, *supra*.

Whether trees in a public highway are a public nuisance "is a question of fact for the jury" in all cases. *Phifer* v. *Cox*, 21 Ohio, 248. If an overseer cuts down a tree which does not obstruct or interfere with the public use of the road he is a trespasser, and if he does so maliciously is liable to exemplary damages. *Winter* v. *Peterson*, 4 Zabriskie (N. J.), 524.

The case of *Chase* v. *City*, 6 Am. R. and Corp. Cases, 1, may appear upon first view of it to be in conflict with the general current of authority and with the cases we have cited, some of which are collated in a note appended to it; but upon a closer examination it will appear that the opinion rests upon the ground that the common council are by special provisions of the charter to "protect the streets from any encroachment or injury," and "to prevent, prohibit and cause the removal of all obstructions in and upon all streets in said city."

The charter of the city of Greensboro provides for condemnation of property for the purpose of changing or widening the streets already in existence and laying out new ones, but we find no special warrant for assuming the judicial function of declaring any obstruction in the whole street a nuisance. If the Legislature had constituted the Mayor and commissioners, or the street committee selected by them, a special court and had empowered them to remove obstructions which, in their judgment, were nuisances, we would still have been compelled to meet the question whether the Legislature could in that indirect way clothe the officers of a municipality with the authority to destroy such private property and deprive the sufferer of the right to "the ancient mode of trial by jury" guaranteed to him "in all controversies respecting property" by the Constitution (Art. I, sec. 1), unless the trees had been planted in contemplation of an express power conferred upon the town council to clear all parts of the streets of trees. This grave question does not arise in this case and the discussion of it is therefore unnecessary. When the point shall be properly presented it will be necessary to determine whether the Legislature can dispense with the right of trial by jury in any case involving the title to property when the litigant could have claimed it under the ancient common law.

It seems that in the recent case of *O'Connor* v. *Telephone Co.*, Vol. XIII, No. 10, p. 336 of Canadian Law Times, the appellate Court of Nova Scotia has held that the rights of the abutting owners of the fee on a street extended to the middle of the highway in his front, and that he had a property in ornamental shade trees in the street in his front and could maintain an action against a telephone company for damages (to be assessed, of course, by a jury) for mutilating such trees.

Says Lawson (Vol. III, Rights and Rem., p. 1758): "Adja-
cent land owners may lawfully use the space between the
carriage path and sidewalks for the growing of trees for
ornament or use.    Trees thus situated are in no sense
nuisances, but private property." But the right of property
stands upon the more substantial ground of inexorable
reason since the city does not appropriate the space between
the sidewalk and the street for corporate purposes, and the
residuary right of the owner of the fee empowers him to
use it.

Even where the right is in the dominant owner to extend
its actual dominion if it become necessary no such sum-
mary destruction without reason is permitted.    Where the
fee is condemned for a railway for a distance of one hun-
dred feet on either side of the track, while the corporation
may build an additional track if requisite for the transac-
tion of its business at any time during the period of its
corporate existence, or may erect structures for corporate
purposes upon the land appropriated, yet if the adjacent
owner plant and raise corn within the limit of one hundred
feet, but not upon the portion of the way actually occupied
by the company, the law neither imposes the duty nor con-
fers the power on the latter to cut down such corn as a
nuisance because it may obstruct the view of an engineer
and prevent him from seeing cattle approaching the line
of railway.    *Ward* v. *Railroad,* 109 N. C., 358; *Ward* v.
*Railroad,* 113 N. C., 566.    On the other hand, the corpora-
tion may in that case remove trees, because that is author-
ized by statute, lest they become a nuisance by falling upon
the track.    But the facts are found and in our opinion the
tree was not shown to be a public nuisance subject to sum-
mary removal by the city, but was the property of the
plaintiff, for the willful destruction of which an action for
damage lies against the trespassers and those under whose

authority they may have acted.   There was no pretense of
a condemnation for a public purpose or of authority to
take, if it was private property, other than in the mode
pointed out in section 60 of the charter, upon a valuation
by three freeholders.   There was no evidence that the tree
was unsound so as to endanger the safety of travelers on
the highway, and there was provision of law in or out of
the charter authorizing the cutting down of trees located
on the margin of the sidewalks or at any point on the
streets to avert danger to the public.   The authority to
make improvements given in a charter, like that to widen
the streets, was coupled with the condition that commis-
sioners should be appointed to assess any damage that
might be caused by the changes made.

In the case at bar the Court found as a fact that the
trees did not obstruct the sidewalk, and in effect that they
were not nuisances, and therefore that there was no author-
ity for destroying them.

When such shade treees neither impede the passage of
vehicles nor unreasonably obstruct the sidewalks the
municipal authorities may enact general ordinances to pro-
tect them even against wanton injury or destruction by the
owner, but are not empowered by orders or by-laws to
cause them to be removed as nuisances, when in law and
in fact they are not nuisances.   Horr & Bemiss, sec. 252,
229; *McCarthy* v. *Boston*, 135 Mass., 197; Wood on Nui-
sances, sec. 294.   An adjacent owner, notwithstanding an
order or ordinance of municipal authorities authorizing it,
is entitled to recover damages for any invasion of his indi-
vidual rights, such as the destruction of shade trees in his
front, when they do not interfere with the use of the high-
way for any public purpose whatever.   Horr & Bemis, sec.
7; *Bliss* v. *Ball, supra;* Wood, *supra*, sec. 294; Elliott on
R. and S., p. 536.   And the destruction of shade and orna-

mental trees, located in a public highway in front of the premises of the abutting owner, has been held to be an irreparable injury to him, and for that reason has been enjoined where their removal was not necessary to the enjoyment of the easement by the public. *Tainter* v. *Morristown*, 19 N. J. Eq., 46; *Cross* v. *Morristown*, 18 N. J. Eq., 305; *Bills* v. *Belknap*, 36 Iowa, 583. "As owner of the fee" (says Elliott, *supra*, 536), "subject only to the public easement, the abutter (who owns the fee) has all the ordinary remedies of the owner of a freehold. He may maintain trespass against one who unlawfully cuts and carries away the grass, trees or herbage, and even against one who stands upon the sidewalk in front of his premises and uses abusive language towards him, refusing to depart." *State* v. *Davis*, 80 N. C., 351.

If the shade trees in front of the plaintiff's house were not a nuisance at common law, nor so declared by statute, no ordinance or proceeding of the municipal authorities or their agents could justify their destruction in the face of the objection of the plaintiff's husband. *Miller* v. *Birch*, 5 Am. Rep., 242; *Yates* v. *Milwaukee, supra*; 1 Dillon, secs. 374 to 379; *Everitt* v. *City of Council Bluffs*, 46 Iowa, 66; *Cooley* and *Fertilizer Co.* v. *Hyde Park, supra*. The three oak trees cut down by the street force, in obedience to the command of the defendant's street committee, King and Scott, after securing the approval of Mendenhall of the same committee, stood at the outer edge of a sidewalk eight feet wide, and within the line of the curbing, and, being directly in front of the plaintiff's dwelling-house, contributed to the comfort of its inmates. The space between the trees and the inner line of the sidewalk was not uniform in width. It averaged eight, but was at no point less than seven feet in width, and was found by the Court to be sufficiently wide to afford "room for persons to pass in the usual manner without inconvenience."

The Judge below found also that "the leaves on said trees obstructed the rays of the sun and so shaded the street as to cause it to be and continue damp for a portion of the time." The finding excludes the idea that the trees were a nuisance in obstructing the sidewalk, and the mere fact that the shade was so dense as to cause occasional dampness under it is not satisfactory evidence that they so interferred with the use of the street as to constitute them a nuisance. *Bliss* v. *Ball, supra.* It is a matter of common observation that all trees which subserve the purpose of shading the ground prevent the earth, within the line of their shadows, from becoming dry so soon as the surrounding space. And the commissioners were not authorized, because they had created a stench by filling a hole near the trees with green limbs, to declare them a nuisance as the cause of the offensive odor, since the Court finds that, after removing them, the municipal authorities, by filling the hole with stone, put the street in good condition, and that this remedy could have been effectually used without molesting the trees at all. So far from showing that the removal was demanded for the benefit or convenience of the public, the conclusion of fact submitted by the Court sustains the contention of the plaintiff that being within the curbing (but seven feet or more from the fence) the trees neither obstructed the sidewalk nor the twenty-three feet of carriage way; that the hole could and would have been filled with stone or earth, and that if the dampness under the dense foliage of the trees made them a nuisance every shade tree that subserves the purpose of planting it, if it casts a shadow upon a highway, would be liable to destruction at the arbitrary bidding of any agent of a town who might be entrusted with the duty of repairing its streets. Lawson R. and Rem., sec. 1033, p. 1758. The statutes, which in some States protect such trees, are in

affirmance of the principle that the owner surrenders to the public only such dominion over the land as he could not exercise without interfering with the easement of the public for use as a highway. The admitted right of the abutting owner under the common law to the herbage, and to sue or sometimes cause to be indicted and punished criminally a forcible trespass committed on the highway in his front, is an illustration of this well-established principle.

It is urged, however, on behalf of the city of Greensboro that it cannot be held answerable for the trespass committed under the direction of the defendants King and Scott, because it appears that "no action was taken or order made by the Board of Aldermen in respect to the removal of the trees, nor was any report made by the street committee to the said Board with regard to their action in the premises."

It was provided in section 12, ch. 1 of the city ordinances that a number of committees, composed of four aldermen each, should be appointed from the members of the Board to take charge of certain departments of the municipal government, and among them was that composed of defendants King and Scott and Aldermen Glenn and Mendenhall, who by the terms of the next section were entrusted with the "control and supervision of all matters relating to the streets, sidewalks and pumps of the city," etc. This appointment, without any further recognition of their acts, constituted King and Scott the agents of the city for the supervision of the streets and all that could be done for the improvement and reparation of them. 2 Dillon, 979 (777). "Towns, counties, villages and cities must respond for such torts of their officers, agents and servants as have been suffered or committed by corporate authority." Cooley on Torts, p. 122. As agents the relation of the members of the committee to the town was legally the

same as that of any servant to his master, and the responsibility of the municipality as superior is likewise governed by the rules applicable to such relation.

Where a trespass is committed in the course of the employment of an agent or a servant and is intended and believed by the trespasser to operate for the benefit of his superior, though it may be willful such superior is none the less answerable for damages. 1 Shearman & Redfield on Neg., sec. 151; Cooley on Torts, p. 536; 4 Am. & Eng. Enc., pp. 252, 253, note 1; *Johnston* v. *Barber,* 5 Gilman (Ill.), 425; *Limpus* v. *Omnibus Co.,* 5 H. & C. Rep. (Exc.), 526. "If in exercising its power to open or improve streets or to make drains or sewers the agents or officers of a municipal corporation, under its authority or direction, commit a trespass or take possession of private property without complying with the charter or statute, the corporation is liable in damages therefor. In such cases also an action will lie against a city corporation by the owner of land through which its agents have unlawfully made a sewer, or for trees destroyed and injuries done by them." 2 Dillon, sec. 974 (772). "Where the working and repair of streets is treated (as in North Carolina) as a municipal duty, and the officer in charge as a corporate in distinction from an independent public officer, or where the injury was negligently caused by such officer in the process of executing upon the streets an authorized corporate improvement or work for them, the doctrine of *respondeat superior* would apply." 2 Dillon, secs. 979 (777), 980 (778) and 983 (4th Ed.). If, then, the city was acting through the members of the committee as its agents, it was in the exercise of its ministerial or corporate as distinguished from its judicial, legislative or discretionary duties, and was therefore answerable as superior for such acts done in the course of their employment as were manifestly intended to enure to the benefit of the

corporation. *Moffitt* v. *Asheville*, 103 N. C., 237; Cooley on Torts, p. 619; *Ibid.*, 122. The implication from the finding of the Court (if that was necessary) is that the committee "concurred in the conclusion that the trees should be removed" in order to improve the street, and that King and Scott, as aldermen, intended to benefit the corporation when they directed the street force to do the work. They then sustained the same relation to the municipality, that a conductor or other agent bears to a quasi-public corporation, such as a railroad or street-car company, and it is well settled by numberless cases that, though the agent or servant of such corporations may willfully commit a trespass in the course of his employment, yet if the act is done with the belief that it will benefit the principal or master and the intention to advance its interest, the principle of *respondeat superior* applies. *Moore* v. *Railroad*, 4 Gray (Mass.), 465; *Shea* v. *Sixth Avenue Co.*, 62 N. Y., 180; *Seymour* v. *Greenwood*, 6 H. & N. (Ex.), 359; 1 Shear & Red., sec. 150; Cooley on Torts, pp. 533 to 537; *Simpson* v. *Omnibus Co.*, *supra*; Pollok on Torts, p. 15.

But not only is the corporation responsible for acts done by its agents in the execution of the duties assigned to them, but a joint action for the tort will lie against the company and the servant. *Hewett* v. *Swift*, 3 Allen, 420; *Johnston* v. *Barber*, *supra*; *Wright* v. *Wilcox*, 19 Wendell, 343.

The law is founded upon the highest conceptions of natural justice. It is impracticable for a Mayor and Board of Commissioners to move in a body along every street of a city and sit in judgment upon the proposed removal of a tree. A city must work through agents constituted by its governing authorities, and when an agency is entrusted to a street committee there is no principle of law, reason or justice that will relieve the municipality of liability for their torts when engaged in the business entrusted to it, because the

27

committee did not desist on an objection to the removal of the tree, stop the street force from work and call a meeting of the council to authorize or ratify the act. The town when engaged in the improvement of its streets or in the performance of any act intended for the benefit of the municipality is liable both for the negligence and willful torts of its agents, just as when an officer or servant of a quasi-public corporation commits little overt acts or negligently omits to discharge his duty he subjects the company that he represents to liability for consequent injury. *Moffitt* v. *Asheville, supra;* Cooley on Torts, p. 619. If a director of a railroad company were appointed to act as conductor the company could not escape liability for removing a passenger on the ground that by disorderly conduct he had been guilty of nuisance when, in fact, his acts did not justify the conductor in ejecting him. The committee were not the less agents of the town council because they were selected from the body itself. It is a well-known fact that the governing authorities of our towns usually, if not universally, entrust the management of improvements, not involving the condemnation of private property, to committees selected from their own bodies. To absolve the towns from liability for a trespass committed by such agents or under their direction for the benefit of the corporation, when in many cases such committeemen are irresponsible primarily, would be to countenance oppression and in some instances what would be equivalent to confiscation.

An ordinance provided that the street committee "shall have control and supervision of all matters relating to streets, sidewalks and pumps, and shall determine the amount of labor and material to be used * * * and shall report to the board from time to time and perform the duties imposed upon them by the Board of Aldermen." Would the ordinary regulation that conductors should report to the president of the company or superintendent

the fact that he had ejected a passenger excuse the company from responsibility for injury caused by a wrongful expulsion? When acting for its own benefit a municipality stands upon precisely the same footing as to liability for the acts of its agents as does a quasi-public corporation. · See *Moffitt* v. *Asheville, supra,* and authorities cited. Suppose such a corporation should by means of a by-law declare the conductor, engineer, baggage-master and flagman a committee to have control of the question of ejecting drunken or disorderly passengers or such as failed to secure tickets or pay fare, would the corporation be allowed to evade liability for the wrongful, willful and violent expulsion of a passenger by the conductor and baggage-man after consulting the flagman, because the engineer did not approve the act till it was communicated? Cooley on Torts, p. 539. To apply the same principle to such agencies as govern in questions of the right of the directors of private corporations to bind their companies would be the entering wedge to the destruction of all corporate liability for the torts of agents and servants. Means would be found by ingenious regulations to leave the public at the mercy or caprice of irresponsible and reckless agents and servants were the possibility of putting the corporation behind such bulwarks once suggested. The right to trial by jury is none the less a constitutional right because juries are sometimes misled by prejudice. The corrective for such an evil, if it exists, is the enactment of statutes requiring greater care in their selection, not judicial legislation restricting the operation of the original law. Says Judge COOLEY, in his work on Torts, p. 122: "Towns, counties, villages and cities must respond for such torts of their officers, agents and servants as have been committed or suffered by corporate authorities." "It is not merely for the wrongful act that the agent or servant is directed to do, but the wrongful act he is suffered to do, that the city is responsible."

*Ibid.,* p. 534. It was the duty of the city to see that its agents were attentive and prudent, and so conducted its business as not needlessly to injure others. *Commissioners* v. *Nicholas,* 10 Met., 259. The law presumes that the city looks after its street force, and the fact that it was engaged two or three days after the order was given by Scott and King in removing the trees is evidence that the Mayor and commissioners knowingly suffered the removal to be made. They knew or ought to have known what these paid laborers were doing.

I think, therefore, that there was error in the ruling of the Court below that the action could not be maintained either against the city or the two aldermen in their individual capacity. The two aldermen were guilty of a willful trespass, for which the corporation became liable, because it was committed in the attempt to discharge their duty to the corporation as agents named in the ordinance and with the intent to improve its streets. The act being willful, the agents were not relieved of responsibility because the principals were made answerable. The committee were not a corporation, but were the authorized agents of the town, and it was not essential that they should meet like stockholders at an appointed time or place. The question is not whether they could bind a municipality by a contract, but whether, as its servants acting within the line of duty prescribed for them, they could make the city a joint tort feasor with them. It was sufficient, I think, that a majority agreed upon a certain course of conduct and their purpose was carried out by the laborers at the bidding of two of the number, and they were not acting in strict conformity (as stockholders) to the terms of a charter, but were agents carrying out a common purpose to cause a trespass to be committed.

MacRae, J.: I concur in the above dissenting opinion.