GEORGE A. CHASE *vs.* CITY OF LOWELL.

Middlesex.   January 22, 1889. — May 6, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Personal Injuries — Defective Shade Tree in Way — Removal by*
*Highway Surveyor.*

A highway surveyor has no power summarily to cut down and remove a shade tree standing in the highway, upon being notified that it is unsound and dangerous to travellers; but, under the Pub. Sts. c. 52, § 10, as amended by the St. of 1885, c. 123, § 2, must proceed to obtain authority to do so upon due proceedings had from the proper municipal authorities, meanwhile taking due precaution against the danger.

TORT for personal injuries occasioned to the plaintiff by the fall of a tree standing in Worthen Street in Lowell. At the trial in the Superior Court, before *Sherman*, J., the plaintiff introduced evidence tending to prove the following facts.

The tree in question stood in an opening in the pavement of the carriageway of Worthen Street, next the curbstone of the sidewalk, and in front of the premises of Dr. F. C. Plunkett. On September 23, 1885, about one o'clock, P. M., while the plaintiff, in the exercise of due care, was walking along on the other sidewalk of the street and had reached a point nearly opposite where this tree stood, it was blown over by a strong wind, across the street, striking the plaintiff in its fall, and prostrating him senseless to the sidewalk. The tree was in a decayed condition, and where it broke off was rotten, except a live rim on the outside about one fourth of an inch in thickness, and extending about one quarter around the tree. One Woodward was superintendent of the streets of the city for that year, and under the ordinances of the city had the charge and supervision of all the streets in the city, and the duty of repairing and caring for the same, the work of paving Worthen Street being done under his direction. The defendant city had no forester. While the work of paving the street was going on, the roots of this tree were uncovered and remained exposed to view a day or so, and at that time were more or less decayed. When the paving was being done, one Hale employed by the defendant

under Woodward to do it cut off portions of the roots of this tree. Woodward passed through the street where this work was being done several times a day, while the same was going on, for the purpose of looking after and supervising it.

One Aldrich, called by the plaintiff, testified that he was employed by the defendant in the street department, and was detailed by Woodward to trim and take charge of the shade trees in the city, and to cut down and remove such trees as were so ordered by the superintendent; that after pruning this tree he said to Woodward that it ought to come down; that Woodward asked him, "What does Doctor Plunkett say about it?" to which he replied, "He says he has had one cut down, and don't want another"; and Woodward said, "Then let it stand."

There was no evidence of any formal complaint in reference to the tree to the mayor and aldermen, or any adjudication by the board as to cutting down or removing the same.

The defendant requested the judge to instruct the jury as follows:

"1. The defendant is not liable in this action upon the evidence presented by the plaintiff.

"2. The defendant had no power or right to remove or cut down the tree causing the injury to the plaintiff, without such complaint to and adjudication by the proper authorities as to the removal or destruction of the same as are provided by law. . . .

"4. No notice of the alleged defect was given to the proper authorities, viz. the mayor and aldermen.

"6. If the jury find that the only practical method of preventing injury to the plaintiff was to remove the tree, and the city had no right or power to remove said tree without being authorized according to law, and it was not so authorized, then the defendant is not liable in this action."

The judge refused to give these rulings, but gave other instructions to which no exception was taken, and among them were these:

"To entitle the plaintiff to recover he must prove . . . that the tree was in such a condition when it fell upon the plaintiff as to make the street defective and dangerous to travellers; that

he received the injury complained of through a defect in this street; that the tree was blown down by such winds as ordinarily occur at that season, in this climate; that the city had reasonable notice of the defect, or might by the exercise of proper care and diligence on its part have had notice of it in season to have prevented the injury complained of; that it is a question of fact for the jury to determine from the evidence whether this tree was in such a condition as constituted a defect in the street at the time of the accident or not. . . . If you find that the tree was a defect in the street, . . . then you will proceed and determine whether the city had reasonable notice of the defect, or by the exercise of proper care and diligence on its part might have had notice, in season to have prevented the injury. Notice to the city must be notice to some officer who has charge of the streets, who has authority to act in relation thereto. Notice to Aldrich, or Hale, or the pavers, would not be notice to the city. The superintendent of streets is an officer competent to receive notice. It is claimed by the plaintiff that the superintendent of streets had direct notice of the defect. . . . Actual reasonable notice to the city of the defect, if any, must be in such language as to call the attention of some person authorized to receive notice to the fact that the tree was dangerous in its then condition. If you find there was not actual notice, then you will next determine from the evidence whether the city might have had reasonable notice thereof by the exercise of proper care and diligence on its part in season to have prevented the injury complained of. . . .

"In determining this, you may consider all the evidence introduced as to its condition . . . as bearing upon the question whether the city might have had reasonable notice by the exercise of due care and diligence on its part. . . . If it exhibited such a state by its appearance, either at its roots or at the top, anywhere, that the city was put upon notice and ought to have made further search because of that fact, and did not, then that bears upon the question whether the city, by the exercise of that care and diligence which it ought to have exercised, might have had notice."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. T. Greenhalge*, for the defendant.

*J. N. Marshall*, (*M. L. Hamblet* with him,) for the plaintiff.

W. ALLEN, J.   The plaintiff was injured while travelling in a public street in Lowell, by the falling upon him of a shade tree growing in the street.   There was evidence that the tree was defective and dangerous from its liability to be blown down by ordinary high winds.   The court refused to give the instruction asked by the defendant, that "the defendant had no power or right to remove or cut down the tree causing the injury to the plaintiff, without such complaint to and adjudication by the proper authorities as to the removal or destruction of the same as are provided by law "; and the instructions to the jury as to the liability of the defendant in consequence of reasonable notice of the defect, and for the want of reasonable care and diligence which might have prevented the injury, were on the assumption that the highway surveyor had authority to cut down or remove the tree.   Whether the defendant had reasonable notice of the defect, and used reasonable care and diligence to remedy it, may have depended upon whether the highway surveyor could cut down the tree immediately upon notice that it constituted a defect in the way.

Section 10 of the Pub. Sts. c. 52, is amended by the St. of 1885, c. 123, § 2, so as to read, "The officer appointed to have the care of the trees belonging to a city or town, and his assistants, but no other person, except as is provided in the following section, and in section ten of chapter fifty-four, may, and when required by the surveyors of highways or road commissioners, shall trim or lop off trees and bushes standing in highways, town ways, streets, or lanes, and when ordered by a vote of the mayor and aldermen, selectmen, or road commissioners, passed after public notice and hearing, shall cut down and remove such trees ; and the surveyors of highways and road commissioners shall forthwith cause to be dug up and removed whatever obstructs such ways, or endangers, hinders, or incommodes persons travelling thereon ; and shall forthwith cause snow to be removed from such ways, or to be so trodden down as to make the ways reasonably safe and convenient."

It is argued that this statute will not be construed to include shade trees that endanger travellers upon the highway, but that,

under the general provisions of the statutes requiring towns and cities to keep the highways safe and convenient for travel, and under the duty imposed upon highway surveyors to remove whatever incommodes or endangers travellers, they have a right to cut down a shade tree which has become dangerous to travellers. We think that the statute limits the duty of the surveyor of highways in such a case to procuring an adjudication that the tree is dangerous and shall be removed, and, until it shall be so removed, to taking due precautions against the danger. The history as well as the language of the statute shows that this is its meaning.

Sections 1, 2, and 3 of the Rev. Sts. c. 25, are taken from the St. of 1786, c. 81, § 1, which prescribed the duties of towns and of highway surveyors in respect to the repair of highways. Section 3 of the Rev. Sts. c. 25, contains the part of the St. of 1786 which defines the general powers and duties of highway surveyors in reference to highways, and provides that "every surveyor of highways shall have full power (except as provided in the following section) to cut down or lop off all trees and bushes, and to dig up and remove all stones, stumps, fences, gates, bars, enclosures, or other things that shall in any manner obstruct or incumber any highway or town way, or hinder, incommode or endanger persons travelling thereon; and when any such way is incumbered with snow, he shall forthwith cause the same to be removed or so trodden down as to make the way safe and convenient." The next section referred to gates, etc., put up to prevent the spread of contagious diseases.

The St. of 1856, c. 256, first authorized the planting of shade trees in highways, and provided that trees planted under such license should be the private property of the person planting them, and should not be deemed a nuisance, but might be removed by the mayor and aldermen, selectmen, or road commissioners, on complaint to them. The provision was re-enacted and extended to all shade trees in the Gen. Sts. c. 46, § 6, which was re-enacted in the Pub. Sts. c. 54, § 6. It was decided in *White* v. *Godfrey*, 97 Mass. 472, that this statute limited the authority of highway surveyors. See also *Bliss* v. *Ball*, 99 Mass. 597; *McCarthy* v. *Boston*, 135 Mass. 197; and *Gaylord* v. *King*, 142 Mass. 495. Section 3 of the Rev. Sts. c. 25, was

re-enacted in the Gen. Sts. c. 44, § 8, the first part of the section being changed so as to read, " Surveyors of highways, except as is provided in the following section, and in sections six and nine of chapter forty-six, may cut down or lop off trees and bushes, and dig up and remove whatever obstructs or incumbers a highway or town way," and concluding with the provision in regard to snow, as in the Revised Statutes. In re-enacting this statute, as amended by the St. of 1880, c. 62, in the Pub. Sts. c. 52, § 10, the words " except such as are needed for shade trees " were added to the exception, so that it read, " except as is provided in the following section and in sections six and nine of chapter fifty-four, may cut down or lop off trees and bushes, except such as are needed for shade trees." The Pub. Sts. c. 54, § 10, forbid any person from cutting down a shade or ornamental tree standing in a public way in a town or city, unless authorized by the municipal authorities. Section 12 of that chapter provides that § 10 should take effect only in cities and towns which had accepted it.

There was, then, before the enactment of the St. of 1885, c. 123, a statute providing that shade trees in streets should be private property, and should not be deemed a nuisance, but might be removed on complaint, and an adjudication that public necessity required their removal; there was a statute in force only when adopted by a town or city, forbidding the owner or any other person to cut down a shade tree standing in the highway without notice to the authorities, and authorizing them to prevent it from being cut down; and a statute authorizing highway surveyors to cut down and lop off trees in the highway, except as provided in these statutes, and except such as were needed for shade trees. The St. of 1885, c. 123, in § 3, expressly repealed the Pub. Sts. c. 54, § 12, which required § 10 to be adopted by towns and cities to have effect, (thus making it penal for any person, without the permission of the authorities, to cut down a shade tree standing in a public way,) and in § 2 amended the statute giving authority to highway surveyors by providing that no person except an officer appointed to have the care of trees, and except on an adjudication under the Pub. Sts. c. 54, § 10, should trim or lop off trees and bushes in the highway; and that such officer should trim or lop off such trees and bushes when

required by the highway surveyor, and should cut down and remove trees in the highway when ordered to do so by an order of the mayor and aldermen, selectmen, or road commissioners, passed after notice and a hearing.

The subject matter of the statute is the same as that of the Rev. Sts. c. 25, § 3, and the St. of 1786, c. 81, § 1. In the Revised Statutes the right to lop off and cut down trees was specified as one of several particulars in a section defining the powers and duties of surveyors of highways. The rest of the section remains unchanged in the statute of 1885, except that superfluous words were omitted when the General Statutes were enacted. The simple provision that highway surveyors might lop off and cut down trees has been gradually changed to conform to other statutes relating to the culture and preservation of shade trees, until, as amended by the St. of 1885, c. 123, § 2, it becomes an enactment that only the officer appointed to have the care of trees in a town or city shall trim, lop off, or cut down a tree standing in a public way, and that he shall not cut down such a tree without an adjudication of the mayor and aldermen, selectmen, or road commissioners. The whole section, like § 3 of the Rev. Sts. c. 25, defines the powers and duties of highway surveyors in removing obstructions from public ways, and it is the same in substance as the section of the earlier statute of 1786, except as regards trees standing in the way, and in regard to them it gives or leaves to the highway surveyors power to require the proper officer to trim them or lop them off, and power to apply to the proper tribunal for an adjudication that they shall be removed. The fact that in the latest amendment the provision was extended so as to include in the prohibition others than surveyors of highways does not show the intention to exclude them. The statute does not distinguish between a tree which endangers and one which incommodes travellers, and it intends that the questions whether a tree standing in the highway is a shade tree, and whether it incommodes or endangers travellers and should be removed, shall be determined, not by the summary discretion of a highway surveyor, but by the adjudication of a tribunal designated by the statute.

*Exceptions sustained.*