GEORGE A. CHASE *vs.* CITY OF LOWELL.

Middlesex.    March 18, 1890. — May 9, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Defective Shade Tree in Way — Duty of Highway Surveyor — Evidence of Notice — Res Gestæ.*

If the superintendent of streets of a city, upon being notified that a shade tree standing in the highway is unsound and dangerous, does not proceed to obtain authority to cut down and remove it, as provided in the Pub. Sts. c. 52, § 10, as amended by the St. of 1885, c. 123, § 2, nor take due precaution against the danger, the city will be liable to a traveller thereon who, while in the exercise of due care, is injured by its fall.

On the issue of notice to a city of the defective condition of a shade tree in the highway, the declarations of persons as to its dangerous character, while looking at its decayed roots at a time when they were exposed, are competent as part of the *res gestæ.*

TORT for personal injuries occasioned to the plaintiff by the fall of a shade tree standing in Worthen Street in Lowell. After the former decision, reported 149 Mass. 85, the case was tried in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows.

There was evidence tending to prove the following facts. The tree in question stood in an opening in the paving of Worthen Street, a highway in the defendant city which the defendant was bound to keep in repair, near the curbstone of the sidewalk, and in front of the premises of one Plunkett. This street was a thoroughfare near the centre of the defendant city, and in that part of the street where the tree stood were two churches, a school-house, and private residences. On September 23, 1885, about one o'clock P. M., while the plaintiff, in the exercise of due care, was walking along on the sidewalk of the street, and had reached a point nearly opposite where this tree stood, it was blown over and fell across the street, striking the plaintiff in its fall, and causing the injuries in question. The tree was in a decayed condition, and where it broke, at a point about five inches above the top of the paving, was rotten. No notice had been posted as a warning

of the condition of the tree, and no safeguards or precautions to prevent injury from it. The defendant city had no forester, but one Woodward was the defendant's superintendent of streets for the year 1884, when the street was paved, and the work was done under his direction. Before the paving was done, the earth about the tree was dug up and removed to a certain depth, and the roots of the tree were left uncovered for several days, and at that time were more or less decayed, as seen by various persons standing on the opposite sidewalk. When the paving was being done, a workman of the defendant city, employed by Woodward to do it, cut off portions of the roots of the tree, Woodward passed through the street several times a day, for the purpose of looking after and supervising the work; and another workman, employed by Woodward to trim and take charge of the shade trees in the city, in pruning this tree told Woodward that it was not safe, and ought to come down. To show notoriety with reference to the condition of the tree, evidence offered by the plaintiff was admitted of conversations overheard between various people when they were looking at the tree and its roots during the time they were exposed, and while the street was being paved, to the effect that it was in a decayed and dangerous condition, and ought to come down.

It was agreed that the fee of the land in Worthen Street belonged to some persons other than the defendant city; that the defendant city had only an easement over it; and that the tree was one of a row of shade trees planted along the side of the street, where it stood, as early as 1850. No formal complaint with reference to the tree was ever presented to the mayor and aldermen of the city, nor any adjudication made by that board as to cutting down or removing the same.

The defendant requested the judge to instruct the jury:

" 1st. That the defendant is not liable to the plaintiff for damages received by the fall of this tree which stood in the highway, under the circumstances and in the manner described by the evidence and facts admitted, although the condition of the tree may have been dangerous, and have rendered the highway unsafe for travel, and although the defendant had notice of the unsafe condition in time to have remedied the same before it fell.

"2d. That the city is not responsible because its proper officers did not make any effort to procure an adjudication that the tree was dangerous and ought to be removed or cut down.

"3d. That the city is not responsible because its proper officers did not take any precautions to avert the danger of the falling tree."

The judge refused to give the instructions prayed for, and instructed the jury as follows:

"The city of Lowell had no legal duty which was not practicable, reasonable, and lawful; the officers of the city of Lowell, in the absence of a formal adjudication by its mayor and board of aldermen, could not lawfully cut down or remove the tree, so that a failure to remove the tree would not be a neglect on the part of the city of Lowell for which it would be responsible to this plaintiff. If the condition of the tree in question endangered the lives of persons or travellers on Worthen Street at the time to which this inquiry relates, and the city of Lowell through its officers had notice of that condition, its officers charged with the duties of supervising and repairing the highways could legally do, and it was their duty to do, any reasonable act by way of surrounding or applying to that tree safeguards or precautions which would prevent injury to the travellers on Worthen Street, and neglect in a matter of such precautions and safeguards, if it was the cause, or exclusive cause, of plaintiff's injury, would cause the city of Lowell to be responsible to him for that injury.

"If the jury find that the condition of that tree reasonably required the officers of the city of Lowell charged with the duties of supervising and repairing its streets to apply for and seek with reasonable diligence for an adjudication by the mayor and aldermen that the tree should be cut down or removed, the neglect to apply for and seek such adjudication would be a neglect for which the city of Lowell would be responsible to the plaintiff; but a failure to procure and obtain such an adjudication would not be the neglect of such officers, if such adjudication was applied for and sought in good faith and with reasonable diligence. Failing to obtain such adjudication would not excuse such officers from surrounding and applying to such trees such safeguards and precautions as would be reasonably required for the safety of travellers on Worthen Street.

"All the other facts being established, as to a defect and notice of it, then would arise the question as to their neglect to take reasonable measures to prevent injury. There are two methods in which that might be done : by safeguards and precautions about the tree, the efficiency of which the city would be responsible for, or by an application for an adjudication that the tree be removed or cut down, the result of which the officers of the city would not be responsible for if it failed."

The judge further told the jury, that these instructions were given to them irrespective of the question whether the tree in question was the property of the city of Lowell, or of any person who now owns or has owned an estate abutting on Worthen Street, or as to who planted the tree.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*L. T. Trull & F. N. Wier*, for the defendant.

*J. N. Marshall, (J. C. Burke* with him,) for the plaintiff.

KNOWLTON, J. It is said in the opinion in *Chase* v. *Lowell*, 149 Mass. 85, that the St. of 1885, c. 123, § 2, in reference to shade trees standing in a highway, "gives or leaves to the highway surveyors . . . power to apply to the proper tribunal for an adjudication that they shall be removed." If a tree standing in a highway is in danger of falling, the authorities whose duty it is to keep the way safe and convenient for travellers should do what they reasonably can to protect the public from it. While an application for its removal may be made to the selectmen or the mayor and aldermen by any person interested, the highway surveyor, who should keep the streets safe, is especially called upon to act. It cannot be said that his conduct is not subject to review in an action of this kind, on the ground that the mayor and aldermen are the only tribunal permitted by law to determine whether a tree should be removed; for in this case there has been no adjudication upon the subject. The question is not presented whether a city could be held liable for an accident caused by the falling of a tree just after a decision by the mayor and aldermen that it was safe and should not be removed. The legislation in regard to trees in public streets was fully considered in the opinion above referred to, and the view there expressed controls the case in its present aspect. There was no error in the instructions.

The defendant excepted to the admission of evidence of what was said by persons looking at the tree and its exposed roots while the street was being paved. This was not admitted to prove the truth of anything stated, but only upon the question whether the city had notice of the defect, or might have had notice of it by the exercise of reasonable care and diligence. Upon this question it has often been held that any facts and circumstances may be introduced which tend to show the notoriety of the defect. *Reed* v. *Northfield*, 13 Pick. 94, 98. *Howe* v. *Lowell*, 101 Mass. 99. *Harriman* v. *Boston*, 114 Mass. 241, 245. The primary meaning of the word " notorious," as given by a leading lexicographer, is " generally known and talked of by the public." Webster's Dict., *Notorious*. In *Donaldson* v. *Boston*, 16 Gray, 508, Mr. Justice Hoar instructed the jury that it must be shown, either that the officers of the city had actual notice of the defect, or that it had "continued so long, or been so notorious, that, if such officers had done their duty, or citizens passing had done their duty, they would have known it; and upon the question of notoriety, the jury might consider whether the obstruction of travel was of such a nature that if citizens, passing by, had seen it, they would have been likely to have forthwith informed such officers of its existence." The case came by exceptions to the full court, and Chief Justice Bigelow in giving the opinion says, " Upon the question of notice to the town, the instructions were correctly stated and properly guarded."

The cases do not go upon the ground that notice to one or more inhabitants of a town constitutes notice to the town, but that such a state of facts may be shown as will warrant an inference that the authorities either knew, or by the exercise of reasonable diligence might have known, of the defect. While the authorities are not to be held responsible for the neglect of citizens to inform them of the existence of a defect, the fact that it was generally talked about in the community is a circumstance which may properly be considered. In such a case, notoriety derives its force as evidence, not merely from its suggestion that the defect was of such a kind that the authorities would have been likely to discover it in the first instance with their own eyes, but quite as much from the probability that their attention would have been brought by others to a mat-

ter which was generally talked about, and in which they were interested. The principle is closely analogous to that on which it has been held in many cases, that one may be found to have had reasonable cause to believe a person insolvent from the fact that he was generally reputed to be insolvent. *Denny* v. *Dana*, 2 Cush. 160. *Bartholomew* v. *McKinstry*, 6 Allen, 567. *Simpson* v. *Carleton*, 1 Allen, 109. *Metcalf* v. *Munson*, 10 Allen, 491. In the performance of their duty to discover and repair defects, officers of cities and towns should avail themselves of all the means of information conveniently to be had. Among these is the general knowledge which the people are likely to have of what affects the common interest. It would be unjust to persons injured by defects, if cities and towns were held responsible only for such defects as the officers, regardless of information, should have first discovered with their own eyes.

In the case at bar, it appeared that the earth had been dug away from about the tree, and the roots had been exposed a day or more while the street was being paved. The street was a thoroughfare near the centre of the city, and in that part of the street where the tree stood were two churches, a school-house, and private residences. The decayed roots were visible to persons on the sidewalk opposite, and the evidence tended to show that large numbers saw them. All this was competent evidence of the notoriety of the defect, and was not objected to. The acts of persons in looking at the roots were an important part of the evidence. From this it might be inferred that they noticed the decayed condition of the roots, and so that knowledge of the defect became general. But that evidence might properly be strengthened by introducing as a part of the *res gestæ* the declarations which accompanied the acts, and which characterized them as acts that communicated intelligence of the condition of the tree to those who looked. The remarks made at the time rendered it certain that the view of the roots gave notice of the defect to those who then saw them. If the fact that these persons looked at the decayed roots was competent as tending to show the notoriety of the defect, then clearly the accompanying declarations which tended to show the nature of the act of looking were also competent.

There is nothing in the adjudication in *Hinckley* v. *Somerset,* 145 Mass. 326, in conflict with these views. There is language in the opinion which goes somewhat beyond the adjudication, but, as the opinion well points out, the evidence which was there held incompetent was not introduced for the purpose of showing notice or knowledge of the facts which constituted the defect, but to show knowledge of an accident from which an inference was sought to be drawn in regard to notice of the danger resulting from the defect.

*Exceptions overruled.*