WILLIAM D. WASHBURN vs. INHABITANTS OF EASTON.

Bristol. October 25, 1898. — February 28, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Shade Trees located in Highway by Road Commissioners — Personal Injuries — Question for Jury.*

Where, in an action for personal injuries occasioned to the plaintiff by collision with shade trees on a public highway, it is not contended that the accident was due to any defect in the trees themselves, and there is nothing to show that there has been any change since the road commissioners located the trees, the law declares that they do not incommode or endanger the public travel, and this decision cannot be revised by a jury.

TORT, for personal injuries occasioned to the plaintiff in November, 1897, while driving along a public highway in the defendant town by colliding with shade trees set out by order of the road commissioners.

Trial in the Superior Court, before *Hopkins*, J., who, at the request of the defendant, ruled that, upon all the evidence, the plaintiff was not entitled to maintain the action, and directed a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*F. S. Hall,* for the plaintiff.

*H. J. Fuller,* for the defendant.

HAMMOND, J. The plaintiff, while travelling in his team in a southerly direction on the highway, overtook another team, and while he was attempting to pass it on the left his carriage came in contact with some shade trees, and he was hurt. These trees were in a line substantially parallel with the easterly wall of the highway, and about six feet distant therefrom, and were in the shoulder of the part of the road which was worked for travel, and distant easterly from such part two feet and nine inches. The trees had been set out about ten years before, under Pub. Sts. c. 54, § 6, by the road commissioners of the town, who had charge of all matters pertaining to shade trees. The road was about forty feet wide between the walls, and the part worked for travel near the place of the accident was about thirteen or fourteen feet wide. On the west side of the road at

the place of the accident there was a level space of about three feet covered with grass to the shoulder of the road, and from there was a gradual descent to the westerly wall; from the westerly shoulder of the road to the wall, the ground was not very even, and some low brush and cobble stones were there. It was not claimed that the trees were in a dangerous or decayed condition, or that they endangered or hindered public travel in any way except by their location. It did not appear that any complaint about the trees ever had been made to the commissioners, or that these officers had ever made any adjudication as to whether the trees were a nuisance to public travel, except such as may be implied from the fact that the trees were set out by their order, and in the place directed by one of their number.

The extent to which the duty imposed by statute upon towns and cities to keep the streets reasonably safe and convenient for travellers thereon is modified by the fact that the objects complained of have been placed within the limits of the street by public authority has been heretofore somewhat considered by the court. In *Young* v. *Yarmouth*, 9 Gray, 386, it was decided that a town was not liable for damages sustained by a traveller upon a highway by reason of a telegraph post erected within the limits of the highway by an electric telegraph company, in a place prescribed by the selectmen of the town, under St. 1849, c. 93, § 3. Section 2 of that statute authorized any electric telegraph company to erect posts upon and along any highway, provided the posts did not incommode the use of the highway. Section 3 made it the duty of selectmen of a town or the mayor and aldermen of a city to give the company their writing specifying where the posts may be located, and the kind and height of the same, and it was further provided that after the erection of the posts the selectmen should have the power to direct any alteration in the location. The trial court instructed the jury, that, " if they were satisfied that the telegraph post complained of was an obstruction, rendering the highway dangerous and unsafe for the purposes of ordinary travel, it would be such a defect in the highway as would render the town liable to any one injured thereby." This court held this instruction erroneous, and Mr. Justice Dewey, after stating that

the selectmen do not act in this matter as the agents of the town, but as public officers, and that there is no appeal, goes on to say : " The consequence of this necessarily must be that the location of the telegraph posts by the selectmen is conclusive upon all parties. The town cannot interfere and remove them ; and their existence upon the highway, if in exact conformity with the regulations prescribed by the selectmen, does not constitute any defect or want of repair in the highway, for which the town can be held responsible in case of any injury thereby occasioned to any person travelling on such highway. If an improper location of telegraph posts has been allowed by the selectmen, the power is fully vested in the selectmen of the town to direct an alteration in such location, and thus obviate any inconveniences that may be found to exist to the traveller or the public generally. But this is not a matter which the town in its corporate capacity can regulate, or for which the town is responsible."

In *Commonwealth* v. *Boston*, 97 Mass. 555, which was an indictment for suffering a highway to be encumbered by posts erected under substantially the same statute as re-enacted in Gen. Sts. c. 64, §§ 2, 3, it was said by the court : " And it seems impossible to conclude that the Legislature, when they gave to a board of public officers the power and duty to direct the places in highways which should be occupied by telegraph poles, and required that their orders should be placed on record, could have intended to leave the existence and continuance of the poles at the places designated to the revision and control of a highway surveyor, or to the discretion of any jury before whom the question might come upon an indictment or action." And also : " It is not according to the usual policy of the law to commit to one tribunal in advance the decision of a simple question of fact, and leave it just as much open to controversy afterwards."

The same principle was applied where watering troughs were maintained under St. 1872, c. 84. *Cushing* v. *Bedford*, 125 Mass. 526.

As was stated by Mr. Justice Morton, in *Johnson* v. *Salem Turnpike*, 109 Mass. 522, 526, " In such cases the liability of towns depends upon the test whether they have the power, and

it is their duty, to remove the obstruction and put the highway in a safe condition."

In the case now before us it is conceded by both parties that the trees were set out about ten years prior to the accident, by order of the road commissioners, acting under Pub. Sts. c. 54, § 6, and that the provisions of § 10 of that chapter and of St. 1885, c. 123, are applicable to them. These statutes in substance provide that "the . . . road commissioners . . . of a . . . town to whom the care of the . . . roads may be intrusted, may authorize the planting of shade trees therein wherever it will not interfere with the public travel or with private rights," and trees so planted "shall not be deemed a nuisance; but upon complaint made to the . . . road commissioners, they may cause such trees to be removed, . . . if the public necessity seems to them so to require." Pub. Sts. c. 54, § 6. Section 10 of the same chapter and St. 1885, c. 123, forbid the removal of such trees except as therein authorized.

These statutes have been considered by this court in two recent decisions. In *Chase* v. *Lowell*, 149 Mass. 85, it was said that the question whether such a tree incommodes or endangers travellers and should be removed is to be determined, not by the summary discretion of a highway surveyor or by a vote of the town, but by the adjudication of a tribunal designated by the statute; and in the same case it was also said, "We think that the statute limits the duty of the surveyor of highways in such a case to procuring an adjudication that the tree is dangerous and shall be removed, and, until it shall be so removed, to taking due precautions against the danger."

This cause came again to this court, (*Chase* v. *Lowell*, 151 Mass. 422,) and it then appeared that the shade tree had become decayed, and that it was blown over upon the plaintiff, a traveller in the highway. The evidence warranted a finding that it had been in a decayed condition so long a time that the persons having charge of the streets ought to have known of it; and the plaintiff recovered. It was said by Mr. Justice Knowlton, in giving the opinion, that if such "a tree standing in the highway is in danger of falling, the authorities whose duty it is to keep the way safe and convenient for travellers should do what they reasonably can to protect the public from it."

In the light of these and similar decisions we think that, so far as material to the present case, the law relating to the liability of towns and cities under Pub. Sts. c. 52, for injuries to travellers by reason of shade trees set out under Pub. Sts. c. 54, § 6, may be stated as follows.

1. The question whether a shade tree so set out is by reason of its locality dangerous to public travel, and for that reason should be removed, is a question over which the town has no control, but it is to be decided by the public tribunal duly appointed for that purpose, (in this case the road commissioners,) and the decision is not subject to review by a jury.

2. This decision when made is until changed to be assumed as correct under the circumstances existing at the time it was made, and is to be taken as the authoritative declaration of the law that the tree so set out under such circumstances is not dangerous to public travel simply by reason of its locality; and in the absence of any subsequent physical change in the road, or in some other material respect, the town is justified in assuming that there is no duty to apply for a change in the decision. But should there be any such subsequent material change, the questions whether the tree is thereby made dangerous, and whether it is the duty of the town to provide against such danger, either by application for a change in the location, or otherwise, may be submitted to a jury.

3. The question decided by the public authorities under the statute being whether the public travel is incommoded or endangered by the locality of the tree in a natural healthy state, and not whether the tree is dangerous by reason of its decayed condition and consequent liability to fall, the questions whether a tree is dangerous from such a liability, and whether the town has used due care to protect the public travel from it when thus dangerous, are always questions which may be submitted to a jury.

In this case there is nothing to show that there has been any change since the road commissioners located the trees. The law has therefore declared that, under the circumstances existing at the time of the accident, they did not incommode or endanger the public travel, and this decision cannot be revised by a jury. It is not contended that the accident was due to any defect in the trees themselves.     *Exceptions overruled.*