INHABITANTS OF SHARON *vs.* CHARLES M. SMITH & another.

Norfolk.    December 9, 1901. — February 28, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Municipal Corporations*, Guideposts, Authority of tree warden.

On the issue whether the use of certain trees for guideposts had been authorized by a town, the facts, that the trees had been so used for many years, that the selectmen orally and in writing had reported them at town meetings as being so used and that no objection of any kind was shown, are sufficient to warrant a finding that the use was approved and ratified by the town without record evidence of any express vote designating the trees as substitutes for guideposts under Pub. Sts. c. 53, § 4.

The care and control of trees given to tree wardens by St. 1899, c. 330, is in sub-

stance the same as that which theretofore had been exercised by the various town officers, and a tree warden has no power to remove guideboards from shade trees used as guideposts by authority of the town.

BILL IN EQUITY by the town of Sharon against the tree warden and deputy tree warden of that town to restrain them from removing the guideboards affixed by authority of the town to certain trees within the limits of a highway, filed October 31, 1900.

At the trial in the Superior Court, before *Bell*, J., without a jury, the judge found as facts, that the trees to which the guideboards were attached were public shade trees within St. 1899, c. 330, that the guideboards had been so attached for many years, and that the location of the guideboards on these trees had been approved and ratified by the town. He ruled, as matter of law, that the prohibition of St. 1899, c. 330, refers to an interference not authorized by law with shade trees, and that it is not an allowable construction of the statute to construe it as giving tree wardens supreme power over trees as against the power of the town to locate and maintain guideboards.

The judge ordered a decree for the plaintiff; and, by consent of the parties, reported the case for the consideration of this court. If the evidence stated by the court was competent upon the question whether the location of the guideboards upon the trees had been legally approved and ratified by the town, and if the interpretation of St. 1899, c. 330, was correct, an injunction was to issue to restrain the defendants from any interference with the guideboards; but if the testimony was incompetent, or if the interpretation of the statute was incorrect, the plaintiff's bill was to be dismissed, or such other order was to be made as justice and equity might require.

*H. F. Buswell*, for the defendants.

*T. E. Grover*, for the plaintiff.

HAMMOND, J. The statutes passed prior to 1887 with reference to guideposts, provided in substance that the selectmen or road commissioners of each town should submit to the inhabitants at the annual town meeting a report of all the places in which guideposts had been erected, and of all places at which in their opinion they ought to be erected; that upon that report the town was to determine the several places at which such

posts should be erected, "which shall be recorded in the town records"; and that at each of the places so determined a substantial post should be erected, with suitable boards with inscriptions thereon showing the distance to the next town and sometimes also the distance to some other prominent town to which the road led, with the familiar figure of the hand; but the inhabitants could "at their annual meeting agree upon some suitable substitute for such guide posts." St. 1794, c. 63. Rev. Sts. c. 25, §§ 28–33. Gen. Sts. c. 45, §§ 1–5. Pub. Sts. c. 53, §§ 1–5. In all these statutes the inhabitants of the town acted upon the report of the selectmen, and determined from it the places where guideposts should be erected. There can be no doubt that quite frequently a tree, and sometimes an artificial structure, like a house, was used as a suitable substitute for the particular kind of post described in the statute. St. 1887, c. 162, amends Pub. Sts. c. 53, § 1, by requiring that the town "shall erect and maintain such guide-posts at such forks or intersections of such highways and other ways as lead to adjoining towns or cities."

One of the questions is whether the evidence justified the finding made by the judge before whom the case was tried, that the location of the guideboards upon the trees had been approved and ratified by the town. Upon this point it appeared, that the trees in question were large and ancient elm trees, and that the guideboards had been affixed to them for many years; that the proper officers had submitted oral reports, and in at least two years, namely, in 1898 and 1899, written reports, which were printed in the annual report of the town officers for these years, to the inhabitants at their annual meeting, of all places in which guideboards were erected and maintained in the town, including the guideboards in question; but there was no record evidence showing that the town by any express vote ever designated those trees as a substitute for posts upon which to place guideboards, nor was there any other evidence on the subject.

Upon this evidence we think that the finding was warranted. The long continuance of the use of the trees as guideposts, the reports oral and written of the selectmen in their official capacity announcing such use, the entire absence of any evidence of any objection by any person to it, and the improbability that this

public duty of affixing guideboards would be performed by any private person, all concur in leading to the conclusion that this use was in conformity with the wishes of the inhabitants and had been in effect approved and ratified by their action in town meeting.

The next question is whether the defendant as tree warden had the power to remove the guideboards which had been thus lawfully placed there. The defendant's authority comes from St. 1899, c. 330.

Within the last fifty years, various statutes have been passed for the culture and protection of shade and ornamental trees in the public streets. The history of this legislation up to and including St. 1885, c. 123, is set out in *Chase* v. *Lowell*, 149 Mass. 85, and it is unnecessary to repeat it in detail.

The general result of the statutes up to that time was that such a tree planted under a license should be taken to be the private property of the person planting it or upon whose premises it was planted, and should not be regarded as a public nuisance, nor should it be removed except upon complaint to the mayor and aldermen, selectmen or road commissioners, and an adjudication that public necessity seemed to them to require it. Penalties were provided for injury wilful or otherwise to such a tree. Several statutes have since been passed, all tending to give greater care to the trees. Sts. 1890, c. 196 ; 1891, c. 49 ; 1892, c. 147 ; 1893, c. 403 ; 1896, c. 190 ; 1897, cc. 254, 428 ; 1899, c. 330.

This last statute requires that every town shall at its annual town meeting elect a tree warden, who, with some exceptions not here material, shall have the care and control of all public shade trees, and shall decide about the cutting or removal of them. A penalty is imposed against any person who affixes to any tree in a public place " a playbill, picture, announcement, notice, advertisement or other thing, whether in writing or otherwise, . . . except for the purpose of protecting it." § 5. In view of the prior legislation on this matter, which it is unnecessary further to rehearse, we think that the care and control given to the tree warden is in substance the same as that which had been theretofore exercised by various town officers, and that the ruling that the prohibition in the statute refers to an interfer-

ence not authorized by law with shade trees and that the statute is not to be so construed as to give to the tree warden supreme power over a tree as against the power of the town to locate guideboards, is correct.

*Injunction to issue.* ·