MARY HABERLIL *vs.* CITY OF BOSTON.

Suffolk.    March 8, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, & BRALEY, JJ.

Suffolk.    December 4, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Elections. Voting Booth. Municipal Corporations. Boston. Way,* Defect in highway.

R. L. c. 11, § 186, does not confer on the aldermen of cities and the selectmen of towns, nor in Boston upon the board of election commissioners, the right to place a voting booth in the travelled part of a public street.

A vote of the board of aldermen of the city of Boston granting permission to the board of election commissioners to place voting booths in the streets of that city does not confer the right to place a voting booth in the travelled part of a public street, the aldermen having no power to give such a right.

A voting booth illegally in the travelled part of a public street may be found to constitute a defect in the highway.

TORT for personal injuries caused by an alleged defect in Seventh Street, a highway of the defendant, consisting of a voting booth with a large board projecting from one side standing in a travelled portion of the highway. Writ dated December 13, 1901.

At the trial in the Superior Court before *Hardy*, J. the defendant showed that the voting booth was placed in Seventh

Street by a person acting under authority from the board of election commissioners and that the projecting board was used to designate the ward and precinct of the booth. The defendant also put in evidence the following order of the board of aldermen of the defendant passed on September 11, 1901, and approved by the mayor on September 12, 1901: " Ordered: That permission be granted the board of election commissioners to place in the streets in this city such polling booths as may be necessary for use at the coming state and city elections, and at such special elections as may be held during the coming year; such booths to be so placed as to incommode the public as little as possible, and to be removed immediately after the city election or such special elections."

The plaintiff testified that she lived on Seventh Street and was crossing the street to go after her little boy who was near the booth, that she had placed one foot on the sidewalk and was near the boy when her head struck the board, and that she did not see the board until after the accident when she looked up and saw that it was the projecting board she had struck against.

The judge ruled that the plaintiff could not maintain the action, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was argued at the bar on March 8, 1905, before *Knowlton*, C. J., *Lathrop*, *Barker*, *Hammond*, & *Braley*, JJ. On December 4, 1905, it was reargued before *Knowlton*, C. J., *Hammond*, *Loring*, *Braley*, & *Sheldon*, JJ.

*J. E. Cotter*, (*J. P. Fagan* with him,) for the plaintiff.

*A. L. Spring*, for the defendant.

HAMMOND, J. The first question is whether the voting booth was lawfully in the public street. It was a one story structure, twenty-five feet long, about ten feet wide, and it was placed within the travelled part of the street, one side of it resting upon the curbstone of the sidewalk and the remainder extending out into the street. The defendant relies upon R. L. c. 11, § 186, which so far as material reads as follows: " The aldermen in cities and the selectmen of every town divided into voting precincts shall, thirty days at least before the annual state or city election and ten days at least before any special

election of a state or city officer therein, designate the polling place for each voting precinct and shall cause it to be suitably fitted up and prepared therefor. It shall be in a public, orderly and convenient portion of the precinct; but if no such polling place can be had within the precinct, they may designate a polling place in an adjoining precinct. No building or portion of a building shall be designated or used as a polling place in which intoxicating liquor has been sold within the thirty days preceding the day of the election." This is a general law applicable throughout the Commonwealth except that in Boston this power is vested in the board of election commissioners of that city instead of the mayor and aldermen.*

In construing this statute it is to be noted that there is no language explicitly providing that a polling place may be located in a street. The natural and easy reading of the language is that this polling place is to be located in a building and consequently in a place where buildings generally are located, namely, not in the travelled part of a street but outside the limits of the street, or at least outside the part worked for public travel. It is to be further noted that the possibility is contemplated that the officers charged with this duty may be unable to find in a precinct a suitable polling place, and in such case a polling place may be designated in an adjoining precinct. This possibility scarcely could arise if it were contemplated that the polling place could be located upon the travelled part of a street or highway. The business of voting has no necessary or natural relation to the purpose to which the travelled part of a highway is devoted, and the establishment of a polling place thereon which shall be large enough to meet the requirements of the statute as to the accommodations required for the voters and the election officers must interfere very materially with the public travel. The ground worked and used as the travelled part of a street is already devoted to one public purpose, and its use for this purpose is not to be interrupted except by language expressly or by necessary implication authorizing such interruption. In view of these considerations we are of opinion that the statute does not confer upon the election commissioners the right to

---

* See Revised Charter of Boston, St. 1895, c. 449, §§ 3–8.

locate a polling booth in the travelled part of a public street. Nor could the vote of the aldermen passed September 11, 1901, confer any such authority. The case is clearly distinguishable from cases like *Young* v. *Yarmouth,* 9 Gray, 386 ; *Cushing* v. *Bedford,* 125 Mass. 526 ; *Washburn* v. *Easton,* 172 Mass. 525 ; and other similar cases cited by the defendant. The booth was illegally in the street, and may be properly found to constitute a defect. *Griffin* v. *Boston,* 182 Mass. 409, and cases there cited. This being so, it was the duty of the defendant to exercise reasonable diligence to protect the public travel.

The questions of the due care of the plaintiff and of the negligence of the defendant were for the jury.

*Exceptions sustained.*