LUCY WRIGHT *vs.* CITY OF CHELSEA.

BERTHA MURRAY *vs.* SAME.

Suffolk. November 10, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Pleading, Civil,* Declaration. *Shade Trees. Practice, Civil,* Exceptions, Conduct of trial. *Way,* Public, defect in highway.

Where in an action of tort the defendant did not demur nor ask for specifications in regard to the allegations in the declaration, he cannot raise objections to irregularities of form in the declaration for the first time at the close of the evidence at the trial.

Review by RUGG, J., of the statutes and decisions relating to shade trees.

Statement by RUGG, J., of the respective duties imposed by our statutes on tree wardens, foresters and park commissioners in regard to shade trees, bushes and trees other than shade trees in towns and cities.

Where the trial of an action of tort against a city is conducted upon an interpretation of the statutes affecting the liability of the defendant which is more favorable to the defendant than the true interpretation, the defendant cannot take advantage of an error in any ruling or instruction which is erroneous by reason of the mistake in its favor.

If a traveller on a highway of a city, while in the exercise of due care, is injured by the falling upon him of a limb of a shade tree, which has been so dangerous by reason of decay that the likelihood of its being blown down by ordinary winds has attracted attention for more than a year, and if the officer whose duty it was to report such a danger to the proper city authorities never has done so, and no attempt has been made to guard the place or to inform the public of the peril, in an action by the traveller against the city for the injuries thus received, it can be found that the injuries were caused by a defect in the highway for which the defendant is liable.

No exception lies to the exclusion of a question to a witness where no statement was made of the answer expected.

The exclusion of questions to a witness likely to lead into collateral matters and to divert attention unduly from the material issues on trial is within the discretion of the presiding judge.

TWO ACTIONS OF TORT, each against the city of Chelsea, for personal injuries alleged to have been sustained by the respective plaintiffs on October 8, 1907, on a public highway of the defendant called Sixth Street, from the falling upon the plaintiffs of a large limb of a tree that long had been in a dangerous condition, of which the defendant had notice. Writs in the Municipal Court of the city of Boston dated January 14, 1908.

On appeal to the Superior Court the cases were tried to-

gether before *Sanderson*, J.   There was evidence warranting the finding of the facts which are stated in the opinion.

At the close of the evidence the defendant asked the judge to give to the jury, among others, the following instructions :

" 1.  That the defendant cannot be held responsible in this form of action because its proper officers did not take any precaution to safeguard the people travelling upon the street in question from the danger of the limb in question falling.

" 2.  The plaintiffs cannot recover merely because of the fact that the tree in question was defective in the manner set forth in the plaintiffs' declarations.

" 3.  Upon all the evidence in the case, a verdict must be for the defendant."

The judge refused to give these instructions, except the second, which, as stated in the opinion, was given in substance.

The defendant excepted to a portion of the charge, wherein the judge instructed the jury that they had a right to consider whether or not any safeguard had been made use of to protect the people travelling upon the street in question, and also, that they had a right to consider whether or not some application had been made to the proper authorities for the removal of the tree or limb in question.

The jury returned a verdict for the plaintiff in each of the cases, in that of Lucy Wright in the sum of $490 and in that of Bertha Murray in the sum of $1,500.   The defendant alleged exceptions.

*S. R. Cutler*, for the defendant.

*W. H. Brown*, for the plaintiffs.

RUGG, J.   These are actions to recover for injuries received by the plaintiffs while travelling upon a public way in the defendant city by the fall of a limb of a shade tree which stood within the limits of a public way, and which had been for more than thirty years under the care of the defendant.

There was evidence sufficient to support a finding that the plaintiffs were in the exercise of due care, and that the limb had been so dangerous by reason of decay and consequent liability to be blown down by ordinary winds as to attract attention for more than a year.   While the declaration might have been more exact in its averments, it is susceptible of the con-

struction that the plaintiffs alleged as the ground of their actions a defective condition of a public way arising from the long continuance of a tree dangerous in respect of a decayed limb, the fall of which injured them. In the absence of a demurrer or motion for specifications by the defendant, it cannot now rely upon technical irregularities in the form of a declaration, to which attention is not called until the close of the evidence.

Statutes respecting the care and responsibility for the condition of shade trees by municipalities have been several times the subject of judicial inquiry. In *Chase* v. *Lowell*, 149 Mass. 85, all the statutes up to that time, including St. 1885, c. 123, were reviewed, and the conclusion was reached that a highway surveyor in a city or town had no power summarily to remove a shade tree standing in the highway, but that the question, whether such tree incommoded or endangered travellers and ought to be removed, should be determined by the adjudication of a tribunal designated by the statute for that purpose. The same case was again before the court in 151 Mass. 422, where the duty of the highway surveyor, as to a dangerous shade tree in a public way, to apply to the authorities for an adjudication, was emphasized, and the municipality was held liable for injury to a traveller if after notice of such dangerous tree the highway surveyor took no action. This case related to the removal and not to the trimming of a shade tree. The subject was again discussed in *Washburn* v. *Easton*, 172 Mass. 525, where the town was exonerated from liability for injuries resulting from shade trees in healthy condition set out under the direction of public authorities. Statutes respecting shade trees have been enacted since 1885, some of which were adverted to in *Sharon* v. *Smith*, 180 Mass. 539, *Hall* v. *Wakefield*, 184 Mass. 147, *Commonwealth* v. *Morrison*, 197 Mass. 199, 205, and *Commonwealth* v. *Byard*, 200 Mass. 175. St. 1890, c. 196, St. 1891, c. 49, St. 1892, c. 147, and St. 1893, c. 403, relate only to the designation and marking of trees, standing in highways, as public shade trees, by boards of aldermen and selectmen, and to penalties for injuries to trees. St. 1893, c. 423, § 26, committed to the superintendent of streets in towns, under the direction of the selectmen, "the care and preservation of shade trees." St. 1896, c. 190, was an enabling act merely, and authorized towns to elect a tree warden and

conferred upon him, if elected, "full care and control of all public shade trees." St. 1897, c. 254, was also permissive, and by § 2 provided for the appointment of a forester in towns which accepted its provisions, to have "charge of all trees" within the public ways, whether shade trees or not, with all the powers of a tree warden. St. 1897, c. 428, § 1, imposed upon "tree wardens or park commissioners, when chosen in towns . . . full care and control of all public shade trees." It would not have been strange if voters and officers in towns may have been somewhat perplexed as to the effect of these several enactments. But it is not necessary to harmonize them, for by St. 1899, c. 330, certain laws relating to shade trees were codified. The election of a tree warden by towns was made compulsory, and his duties and powers were enlarged and defined. By implication St. 1893, c. 423, § 26, St. 1896, c. 190, and St. 1897, c. 428, were repealed. St. 1890, c. 196, and St. 1891, c. 49, were repealed as to towns, because by St. 1899, c. 330, § 2, all shade trees standing within the limits of ways in towns were made public shade trees, and hence there was no occasion for special provision as to designating and marking. St. 1899, c. 330, however, conferred upon the tree warden jurisdiction of public shade trees alone. Hence in towns which had accepted St. 1897, c. 254, respecting a forester, that officer still had charge of bushes and trees other than shade trees within public ways, but in towns where there was no forester, the tree warden alone had authority to trim, cut down and remove such other trees and bushes by virtue of Pub. Sts. c. 52, § 10, as amended by St. 1885, c. 123, § 2, and upon the conditions therein pointed out. With the exception of St. 1885, c. 123, these statutes in the respects enumerated related to towns only, and had no effect upon cities. The cutting or removing of public shade trees in cities was still regulated by Pub. Sts. c. 54, § 10. This possible uncertainty in the effect of numerous statutes was perceived by "the commissioners for consolidating and arranging the Public Statutes," as appears by note to c. 53 of their report (on which the Revised Laws are based), and they attempted to remove it. With the exception of State highways, which it is not necessary to discuss (see R. L. c. 47, § 21; St. 1905, c. 279; St. 1908, c. 297; St. 1890, c. 196, and St. 1891, c. 49, which are not material upon this point) the provisions of

law relating to the care of shade trees in towns were embodied in R. L. c. 53, §§ 12 to 15 both inclusive, and in c. 28, § 4, according to which park commissioners, wherever there were such officers, had control of shade trees in places under their jurisdiction; those touching the planting of shade trees, both in cities and towns, in c. 53, § 6; and those as to the cutting down or removal of such trees in cities in c. 53, §§ 7 and 8. Provisions common to cities and towns as to trees and bushes which obstruct and endanger public travel are in R. L. c. 51, § 10. This last section, however, makes important differences between the powers of city and town officers. Its portions material to this inquiry are: " The officer who has the care of trees belonging to a city or town . . . may, and if required by the surveyors or road commissioners shall, trim or lop off trees, except public shade trees in towns, and bushes standing in ways, and, if ordered by a vote of the mayor and aldermen, selectmen or road commissioners passed after public notice and hearing, shall cut down and remove such trees and bushes." By this statute it is mandatory upon the officer having charge of public shade trees in cities to trim or lop off all trees, whether shade trees or not, standing in ways, upon the request of the officer having charge of public ways. See *Chase* v. *Lowell*, 149 Mass. 85, at 91. No such provision is made as to towns, for in them the entire jurisdiction over public shade trees is vested in the tree warden, and as by R. L. c. 53, § 12, all shade trees within the limits of public ways are public shade trees, his jurisdiction extends over all shade trees in towns except such as by R. L. c. 28, § 4, is given to park commissioners. The discretion and sound judgment of the town tree warden alone determines whether a shade tree shall be trimmed or lopped, and he is not subject to the control of the surveyor or road commissioners. But in towns, the tree warden, or forester where there is one, is obliged to trim or lop trees other than shade trees, standing within public ways, upon demand of the surveyor or road commissioners. It follows as a necessary result of this provision that in cities not governed by some special charter or other statutory provision to the contrary (see for example St. 1866, c. 199, § 21; St. 1885, c. 163), it is the duty of the officer in charge of streets to ascertain the safety of limbs of trees, and to require dangerous branches to be re-

moved immediately by the officer having charge of shade trees. The city official having charge of trees is bound at once and without hearing to act in accordance with such demand. It may be assumed that the Legislature made this provision in order that the trimming should be done, not by the road officer inexperienced in such matters, but by the scientific judgment of a forester or other official familiar with trees, and that thus the beauty and preservation of shade trees be conserved. At the same time it recognized that the safety of the travelling public is the paramount consideration, and placed upon the officer, charged with responsibility of maintaining all public ways reasonably safe and convenient for travel, the duty of determining whether any branches should be removed. The cutting down of shade trees can be done in cities, as well as in towns, only after an adjudication as provided in R. L. c. 51, § 10. As the present causes of action accrued in 1907, it is not pertinent to inquire what changes have been wrought by St. 1908, c. 296, and St. 1910, c. 363. The case was not tried in the Superior Court upon this interpretation of the statutes, but the defendant suffered no harm because the rules laid down were more favorable to it than those here stated.

If, however, it be assumed that the injury to the plaintiffs was due to a dangerous tree which could have been remedied only by its removal, and not by its trimming, the defendant has shown no error in the trial. There was testimony from several witnesses that the threatening condition of the tree had been plain for more than a year. On this showing, which the jury by their verdict under the instructions given must have found to be true, the officer charged with the care of the streets forthwith ought to have instituted proceedings before the appropriate public board to have the tree removed, and in the meantime by signs or otherwise to have warned the travelling public of the danger. It would have become the immediate duty of the public board to adjudicate that the tree should be removed. It must be assumed that such public board would act promptly and in accordance with the evidence. Seemingly no effort to this end had been made. On the contrary, the officer, whose duty it was to report any such danger to the proper city department, testified that he had never done so. No attempt to guard

the place or inform the public of the peril appears to have been made. The defense rested as to evidence on the contention that there was no defect. This case does not raise any question as to what might be the law in the event of a claim for injuries received while the condition of the shade tree was the same as that which the public board had adjudged to be safe. But it is a case where there was evidence to support a finding that there had been for a long time a dangerous tree with no action whatever by the city officers respecting it. As pointed out by Mr. Justice Hammond in *Washburn* v. *Easton*, 172 Mass. 525, at 529, the questions whether the tree was dangerous by reason of decay and consequent liability to fall, and whether the municipality has used due care to protect the public from it while thus dangerous are ordinarily to be submitted to a jury. *Nestor* v. *Fall River*, 183 Mass. 265. This case called for the application of that rule. It was stated with sufficient amplification in the charge. The requests of the defendant for instructions to the jury were rightly refused except the second which was given in substance. The defendant suffered no injury by portions of the charge, to which exceptions were taken, for they were correct as applied to the theory on which the case was tried.

The foreman of the defendant's street department, after testifying that four trees were blown down during the storm in which the plaintiffs were injured, was asked, " Has there ever been a time when there was more than four trees blown down in the city in any one day ? " This was excluded against the defendant's exception. No offer was made of what answer was expected, and the exception should be overruled on this ground. But assuming it would have been favorable to the defendant, the inquiry was properly excluded in the discretion of the trial judge as likely to lead aside into collateral matters and divert attention unduly from the main issue.

*Exceptions overruled.*