SAMUEL R. WHITING *vs.* BOARD OF PUBLIC WORKS OF HOLYOKE & others.

Hampden.    June 21, 1915. — September 20, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Shade Trees. Holyoke. Municipal Corporations,* Board of public works. *Words,* "Care."

By the provisions of the revised charter of Holyoke contained in St. 1896, c. 438, § 37, the board of public works of that city were given the powers of road commissioners, which include the care of shade trees in highways with the power to cut down and remove any tree which shall be deemed to obstruct, endanger, hinder or incommode persons travelling on the highway, and this power was enlarged by St. 1915, c. 145, § 5, which applies to the city of Holyoke, and which does not require the public notice and hearing before an order for such removal can be passed that formerly were required by R. L. c. 51, § 10.

BILL IN EQUITY, filed in the Superior Court on May 25, 1915, seeking to enjoin the board of public works of the city of Holyoke from ordering the city forester to cut down a certain elm tree in

front of the plaintiff's land on Northampton Street in Holyoke, and to enjoin the city forester from obeying such order, the mayor of Holyoke also being made a defendant.

The case was heard by *Aiken,* C. J., without a jury. He found that the defendants the board of public works had found and that it was their opinion that the tree in question endangered persons travelling on the highway and, further, that it obstructed, endangered, hindered and incommoded persons travelling thereon, and that therefore they were about to cut down or remove, or to order the city forester to cut down or remove the tree in question, and that the city forester, thus ordered to remove the tree, would do so. He found also that no hearing had been held by the board of public works or by the city forester under the provisions of St. 1915, c. 145, § 3, nor had any notice of a hearing been given.

The Chief Justice ruled, as a matter of law, that in the city of Holyoke the mayor and aldermen were the only board or officials in that city who could, without a hearing under the provisions of the section named, order the removal or remove the tree in question, and that therefore the plaintiff was entitled as a matter of law to the injunction granted. The defendants appealed. The material statutes are quoted and described in the opinion.

The case was submitted on briefs.

*A. L. Green,* for the defendant.

*T. D. O'Brien,* for the plaintiff.

BRALEY, J. We assume on the record that the tree in question is a shade tree belonging to the plaintiff, whose premises abut on the public way where the tree stands. The authority of the board of public works to order its removal is derived from the St. of 1896, c. 438, which is the revised charter of the city of Holyoke. By § 37, "The board of public works shall have cognizance, direction and control : (a) Of the construction, location, repair, care and lighting of streets, ways and sidewalks; (b) of the construction, alteration, repair and care of public buildings; (c) of the construction, alteration, repair and care of main drains or common sewers; (d) of the construction, alteration, repair, care and maintenance of public bridges; (e) of the care, superintendence and management of the public grounds, except public parks, belonging to said city, and of the shade and ornamental trees growing therein. The said board may require that no person or

corporation authorized by the board of aldermen to dig up any public street or .sidewalk in said city shall begin such digging before furnishing to such board of public works, security satisfactory to them to restore such streets or sidewalks to their former condition. The said board of public works, except as herein otherwise provided, shall have exclusively the powers and be subject to the liabilities and penalties imposed by law upon road commissioners of towns."

While the word "care" means ordinary and not specific repairs, *Simpson* v. *North Adams,* 174 Mass. 450, and a tree standing within the location never has been recognized as forming part of the construction of the highway, *Chase* v. *Lowell,* 149 Mass. 85, and *Wright* v. *Chelsea,* 207 Mass. 460, (where the various enactments concerning the preservation and removal of shade trees before St. of 1915, c. 145, are collected and reviewed,) the board is also given the powers of road commissioners. By the St. of 1893, c. 423, § 23, in force when the charter was adopted, road commissioners in all matters concerning streets, ways, bridges, monuments at the terminations and angles of roads, guide posts, sidewalks and shade trees were given the powers of selectmen and surveyors of highways. *McManus* v. *Weston,* 164 Mass. 263. And by the St. of 1885, c. 123, § 2, which is applicable to cities as well as towns, a tree within the public ways could not be cut down or removed except by "The officer appointed to have the care of the trees" when ordered by vote of the mayor and aldermen, selectmen or road commissioners, passed after public notice and hearing. The St. of 1885, c. 123, § 2, and St. of 1893, c. 423, § 23, were codified in R. L. c. 51, § 10, and c. 25, § 83. The material language used in this section of the charter had been interpreted in *McManus* v. *Weston,* 164 Mass. 263, 266, and *Simpson* v. *North Adams,* 174 Mass. 450, and unless qualified it should have the effect given by the court.

The words "except as herein otherwise provided" do ,not curtail the powers conferred, as the other provisions of the charter do not reserve to the executive or legislative departments any control over the care or removal of trees in the highways of the city. The board of public works, therefore, had all the powers of road commissioners as if such powers had been specifically enumerated, unless the St. of 1915, c. 145, entitled "An Act to

codify and amend the laws relative to public shade trees," which "in so far as it gives authority over trees and bushes" expressly repealed § 10 of c. 51 of the R. L., deprived it of jurisdiction. The statute is as comprehensive as the title. It defines a public shade tree, and by § 3, "Except as provided in section five, public shade trees shall not be cut, trimmed or removed, in whole or in part, by any other person other than the tree warden or his deputy, whether such person is or is not the owner of the fee in the land on which such tree is situated, except upon a permit in writing from said tree warden, nor shall they be cut down or removed by the tree warden or his deputy or other person without a public hearing at a suitable time and place, after notice thereof posted in two or more public places in the town or city and upon the tree at least seven days before such hearing, and after authority granted by the tree warden therefor: provided, however, that if the tree warden shall refuse to cut or remove or issue a permit to any such owner to cut or remove any such tree or other growth, the damages, if any, sustained by him shall be determined in towns by the selectmen and in cities by the officer or officers in charge of public shade trees and shall be paid by the town or city. Any person aggrieved by the action of the selectmen or said officer or officers in charge of the public shade trees as to the trimming, cutting, removal or retention of any such tree, or as to the amount awarded to him for the same may have the damages, if any, which he has sustained, determined by the Superior Court for the county in which the said tree is or was situated, upon a petition filed for the purpose, in the same manner as for the taking of land for ways; and his damages, so determined, shall be paid by the town or city." Under § 4, "Tree wardens shall not cut down or remove or grant a permit for the cutting down or removal of a public shade tree if, at or before a public hearing as provided in the preceding section, objection in writing is made by one or more persons, unless such cutting or removal or permit to cut or remove is approved by the selectmen or by the mayor."

But, if these sections carefully regulate the cultivation and preservation of "public shade trees," § 5 provides, that tree wardens and their deputies "if ordered by the mayor and aldermen, selectmen, road commissioners or highway surveyor shall trim or cut down trees and bushes, if the same shall be deemed to obstruct,

endanger, hinder, or incommode persons travelling thereon." The powers of tree wardens in towns are by § 1 conferred upon officials charged with the care of shade trees within the limits of highways in cities by the charters or other legislative enactment, or by the ordinances of said cities, and § 5 furthermore declares, that "Nothing contained in this act shall prevent the trimming, cutting or removal of any tree which endangers persons travelling on a highway . . . if so ordered by the proper officials." It was said in *Simpson* v. *North Adams,* 174 Mass. 450, where a section in the charter containing a sub-section and general clause similar to sub-section (a) and the general clause of § 37, were considered, that the general clause, "which may be by law given to or imposed upon road commissioners of towns" was intended "to include present as well as future legislation," and no sufficient reason appears why this construction should not be followed. See St. 1895, c. 148, § 37.

The legislation concerning public shade trees has been enacted from time to time not merely to satisfy the desire of cities and towns for the conservation in their thoroughfares of shade and ornamental trees, in many instances a legacy from the past or the gift of public spirited citizens, but for the benefit and enjoyment of all the inhabitants of the Commonwealth having occasion to use the public ways. The St. of 1915, c. 145, pursuant to this long established policy is applicable to the municipality of Holyoke which is not in terms excepted from its provisions. *Logan* v. *Mayor & Aldermen of Lawrence,* 201 Mass. 506, 511. It does not abridge but enlarges the powers of the board contained in the charter. The important change is that by § 5 public notice and a hearing are no longer required before an order for removal can be passed, if the conditions named therein exist. The board, as was found by the trial court, having determined that the tree "obstructs, endangers, hinders and incommodes" persons travelling on the highway, the order issued to the city forester for its demolition or removal was warranted, even if the plaintiff had not been notified or given an opportunity to be heard. St. 1910, c. 363, § 1. St. 1915, c. 145, § 1.

The decree granting injunctive relief must be reversed, and a decree is to be entered dismissing the bill with costs.

*Ordered accordingly.*